· MARY E. CANAVAN'S CASE.

Suffolk.    December 6, 1973. — March 8, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Workmen's Compensation Act,* Injuries to which act applies, Recommittal to Industrial Accident Board.

In a workmen's compensation case, the Industrial Accident Board would have been warranted in finding that a myocardial infarction suffered by the employee, a nurse, arose "out of and in the course of . . . [her] employment" by a hospital on evidence that her illness was caused by her voluntary rendering of assistance to two injured men whom she found on the hospital premises upon returning there from a day off, although it appeared that at the time of rendering aid to the men she was not on duty and that she was not required to live at the hospital but in which they were injured had any connection with the hospital. [764-766]

Where the evidence in a workmen's compensation case would have warranted a finding that an injury suffered by the employee arose out of and in the course of her employment within G. L. c. 152, § 26, but the Industrial Accident Board made no finding on that issue, although it awarded compensation, the case must be remanded to the board for a finding on that issue. [766-767]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act.

The employee appealed from a decree by *Hallisey, J.,* dismissing the claim.

*James F. Mahan (Steven K. Farnham* with him) for the employee.

*David H. Drohan,* Assistant Corporation Counsel, for the City of Boston.

QUIRICO, J.   The claimant employee in this workmen's compensation case was employed by the city of Boston, a self-insured employer, as a licensed practical nurse at the Long Island Hospital. At the time she sustained the injury for which she seeks compensation she lived on the hospital premises.

About 11:30 P.M. on June 29, 1967, while returning in her car to the hospital after a day off, the employee saw two men lying on the Long Island bridge, "hollering" for help. The bridge is located on the hospital premises, and is about three and one-half miles from the public way leading to the entry to the premises. The employee stopped her car, went over to the men, observed a boat on fire in the water below them, and told them to stay there while she went for help. She drove back the three and one-half miles to the guardhouse at the entrance to the hospital grounds, told two guards on duty that there were two persons on the bridge, asked them to bring some blankets for the persons, and then drove back to the bridge with the guards following her in their car. She waited on the bridge until the guards arrived and she then drove to the hospital and went to her room. About ten minutes later, while she was preparing for bed, she began to experience chest and stomach pains. The next day she called a doctor and was seen in his office. After an electrocardiogram was taken she was admitted to the Carney Hospital and confined there for one month, diagnosed as suffering from myocardial infarction. She did not return to work at the hospital until July 1, 1968, and claims total disability compensation for the period from June 29, 1967, to July 1, 1968.

After hearing, a single member of the Industrial Accident Board found in accord with an opinion rendered by an internist specializing in cardiology (called as a witness by the employee) that the employee's heart condition and subsequent disability were causally related to the emotional strain brought on by the "incident" she observed on the bridge on June 29, 1967; he also found that at the time of this incident she was on the hospital premises. He awarded total disability

compensation for the period claimed. The reviewing board affirmed and adopted the findings and decision of the single member. Thereafter, on certification of the case to the Superior Court, a judge of that court entered a decree dismissing the employee's claim for compensation. The employee appeals from this decree.

The principal issue raised before the single member and the reviewing board was whether the heart injury for which the employee claims compensation was one "arising out of and in the course of . . . [her] employment" as required by G. L. c. 152, § 26. On judicial review the findings and decision of the reviewing board must be accepted as final unless wholly lacking evidential support or tainted by error of law. *Hachadourian's Case,* 340 Mass. 81, 85 (1959). *Haley's Case,* 356 Mass. 678, 680 (1970). While the reviewing board's award of compensation implies a finding that the employee's injury arose out of and in the course of her employment, and while we conclude that the single member and the reviewing board could have made such a finding on the evidence before them, it is clear from the record that no such finding was made. We therefore hold that the case should be remanded to the Industrial Accident Board for findings on the issue whether the employee's injury did arise out of and in the course of her employment.

The self-insurer argues that as matter of law the decision of the reviewing board awarding compensation cannot be sustained because the evidence provided no basis for finding that the employee's injury was one "arising out of and in the course of . . . [her] employment." It does not appear to dispute the finding of causal connection between the employee's heart attack and the incident she observed on the bridge on the night of June 29, 1967, nor the finding that she was on her employer's premises when such incident occurred. Rather it argues that her injury did not arise out of and in the course of her employment because at the time she saw and tried to help the two men on the bridge she was not on duty, had not been on duty that day, and was not to be on again for more than fifteen hours, and it emphasizes the fact

that she was not required to live at the hospital but did so voluntarily. It also contends that her efforts to get help for the men were entirely voluntary and noncompensable because the boating accident was not a responsibility of the hospital and was completely unrelated to her employment.

We believe that the self-insurer attempts to define too narrowly the phrase "arising out of and in the course of" employment. Admittedly the employee was not on duty when she went to the aid of the men on the bridge and there was no showing that the men or the boat were in any way connected with the hospital. However, efforts to render assistance in case of emergency to people who might be injured are certainly consistent with the duties of a nurse. When such efforts are made, as in this case, by one regularly employed as a nurse while she is on her employer's premises, we believe that an injury resulting from them could be considered as incidental to and "arising out of and in the course of" her employment, regardless of the fact that she was off duty at the time. "[T]he employee, in order to be entitled to compensation, need not necessarily be engaged in the actual performance of work at the moment of injury. It is enough if he is upon his employer's premises occupying himself consistently with his contract of hire in some manner pertaining to or incidental to his employment." *Souza's Case,* 316 Mass. 332, 335 (1944). *Horan's Case,* 346 Mass. 128, 129 (1963). See *Peter's Case,* 362 Mass. 888 (1972).

We also believe that the fact that the employee was not required to live at the hospital, but was on the premises at the time of the bridge incident because she voluntarily chose to live there, in itself is not dispositive of her right to compensation. In *Kilcoyne's Case,* 352 Mass. 572 (1967), the employee, an attendant nurse at a State school who lived on the school premises although not required to do so, was injured when he fell while carrying groceries to his room on a day off. We sustained the reviewing board's finding that the injury was one "arising out of and in the course of" the claimant's employment and its decision granting compensation, stating that the employee's presence on the premises on

his day off was related to his employment, as his choice of living at the school was advantageous to the employer as well as to himself. 352 Mass. at 575. The evidence in the present case was sufficient, if believed, to support a similar finding and decision by the board.

Finally, in the circumstances of this case, the voluntary nature of the employee's efforts to aid the men on the bridge does not make her injury noncompensable as matter of law. In *Burgess's Case,* 331 Mass. 90, 92-93 (1954), where the claimant employee, a salesman, was injured while pursuing the unknown assailant of one of his employer's potential customers, we sustained the reviewing board's denial of compensation, stating that the employee's efforts to capture the assailant, while commendable, were voluntary acts and not part of his duties under the terms of his employment. The present case is distinguishable. The employee's voluntary efforts to give assistance in *Burgess's Case* occurred away from his employer's premises and were not related to the general duties of a salesperson, while the incident on the bridge and the employee's resulting acts of assistance in this case took place on the hospital grounds and were consistent with the nature of her employment. It should also be noted that in *Burgess's Case* we were reviewing a decision of the reviewing board which itself found that the employee's injury did not arise out of and in the course of his employment. The limited scope of our review of such a board determination has been noted above.

Based on the reasoning of prior cases such as *Souza's Case,* 316 Mass. 332, 335 (1944), *Horan's Case,* 346 Mass. 128, 129 (1963), and *Kilcoyne's Case,* 352 Mass. 572, 575 (1967), we have concluded, as noted, that the reviewing board could have found on the evidence before it in this case that the employee's injury did arise out of and in the course of her employment. However, as we also noted, no such finding was made by it or by the single member. It is the Industrial Accident Board's responsibility to make findings of fact in the first instance. G. L. c. 152, §§ 8, 10. The court on review cannot supply such findings where they are missing by

drawing its own inferences from the evidence and record. Since the evidence before the board in this case would warrant but not compel a finding that the employee's injury arose out of and in the course of her employment, we must remand the case to the Industrial Accident Board to make a specific finding on this question. *DiClavio's Case,* 293 Mass. 259, 261-262 (1936). *Filosa's Case,* 295 Mass. 592, 596 (1936). *Judkins's Case,* 315 Mass. 226, 227 (1943). *Whitaker's Case,* 354 Mass. 4, 5 (1968).

The decree of the Superior Court dismissing the claim for compensation is reversed, and a new decree is to be entered remanding the case to the Industrial Accident Board for further findings. *Bradford's Case,* 319 Mass. 621, 623 (1946). *Lendall's Case,* 342 Mass. 642, 648 (1961).

*So ordered.*