**INDIANA BELL TELEPHONE COMPANY, INCORPORATED, Defendant-Appellant,**

v.

**Clifford ERNST, Plaintiff-Appellee.**

No. 2–882A263.

Court of Appeals of Indiana, Third District.

Feb. 15, 1983.

Richard O. Creedon, Indianapolis, for defendant-appellant.

Alton D. Priddy, Hardy, Logan & Priddy, New Albany, for plaintiff-appellee.

GARRARD, Judge.

Indiana Bell appeals from the Industrial Board's decision that Ernst was entitled to workmen's compensation.

We affirm.

Ernst was employed on April 20, 1979 as an installation and repair technician for Indiana Bell. On that day his assigned tasks for the afternoon were to upgrade the telephone system in a church and to disconnect a wire at a mobile home park. He was then to return his truck to the company garage.

A Bell supervisor assisted Ernst at the church for several hours. The supervisor then left the church about 3:30 p.m. but Ernst did not leave until after 11:00 p.m. From the church Ernst proceeded to the mobile home park and disconnected a line, his last assigned task for that day. While returning to the company garage Ernst's truck was struck by another vehicle which had crossed the center line.

Ernst suffered severe injuries as a result of the collision. Following the accident Bell placed Ernst on disability for one year and one week. Bell classified the accident as a "non-job" incident and terminated Ernst's employment when "one year and one week" had passed. During that period Bell paid Ernst $343.50 per week for 14 weeks and $171.75 per week for 39 weeks under a sickness benefit authorization program.

On January 14, 1981 Ernst filed a Form 9 complaint with the Industrial Board seeking an adjustment of his claim for compensation from Bell. He designated the general nature of the question in dispute as "The defendant denies liability for compensation."

Upon hearing, the hearing member found that on April 20th Ernst was assigned to perform the two jobs previously referred to and that he took longer on the church job than he should have. However, the hearing member found the delay was immaterial since at the time of the collision Ernst had clearly resumed his duties by disconnecting the line at the mobile home park and returning from there directly to the garage. He awarded compensation and the full board affirmed.

Bell argues that the board erred in finding the injury occurred in the course of and arose out of the employment. It also argues the board erred in refusing to credit against the award payments it made to Ernst.

ISSUE 1:

IC 22–3–2–2 provides:

"[E]very employer and every employee, except as herein stated, shall be required to comply with the provisions of this law, respectively to pay and accept compensation for personal injury or death by accident *arising out of and in the course of employment,* and shall be bound thereby."

As we discussed in *Olinger Construction Co. v. Mosbey* (1981), Ind.App., 427 N.E.2d 910:

"The phrases 'out of' the employment and 'in the course of' the employment have separate meanings and both requirements must be fulfilled before compensation is awarded.

'Out of' portends some probe into causation and the relationship of a particular accident and a particular harm to the employment sought to be charged. The primary inquiry is directed toward the question of whether the accidental injury or death was the outgrowth of the employment, whether it was due to the employment, whether it was work-induced. *Generally stated, the rule seems to be that an accident arises out of the employment when there is a causal connection between it and the performance of some service of the employment. A causal connection is established when the accident is shown to have arisen out of a risk which a reasonable person might comprehend as incidental to the employment, or where the evidence shows an incidental connection between conditions under which the employee worked and his resulting injury or death. The phrase, inthe course of, requires, on the other hand, some investigation into the work itself and the breadth of its grasp. The principal emphasis is upon the time and place elements, so that 'in the course of' the employment might be taken to mean 'during' the employment."* (footnotes omitted, emphasis added).

B. SMALL, WORKMEN'S COMPENSATION LAW IN INDIANA, Section 6.1 (1950).

■ Ernst was returning a company truck to the company garage after completing the last assigned task of the day when the accident occurred. It is undisputed that his duties called for him to return the truck after he finished work. The facts are clear that he was injured in an accident arising out of his employment since such collisions are a reasonably foreseeable consequence of driving a company truck over the public highways. *See Suburban Ready Mix Concrete v. Zion* (1983), Ind.App., 443 N.E.2d 1241; *Olinger Construction Co. v. Mosbey, supra.*

The dispute is whether Ernst was injured in the course of his employment.

Ernst was injured after 11:00 p.m., hours beyond his scheduled quitting time. The fact that he was working outside his scheduled hours does not necessarily mean he was not in the course of his employment.

"If an injury occurs either before or after working hours, it is generally considered as not arising in the course of his employment for the obvious reason that the employment has not started, or that it is all over. However, *it is a question of fact as to when employment commences and when it ceases, and in some cases, it is somewhat difficult to determine exactly where the dividing line lies between the employment and its incidents and the rest hours of the workman.*" (emphasis added)

B. SMALL, WORKMEN'S COMPENSATION LAW IN INDIANA, Section 7.10 (1950).

The hearing officer had two conflicting versions of the facts before him. Indiana Bell argues Ernst understood that he was to request authority before working overtime. Bell contends that Ernst made no effort to contact the office to request authority to work overtime. Further, it asserts such authorization would have been denied.

In summary, Indiana Bell asserts "claimant stayed on a job 10½ hours which had an assigned work time of 3½ hours. He never [sic] told his supervisor he would not be done by normal quitting time. He knew he was not to work overtime unless it was authorized. He had been told this by Wa-

ble, Maddox and Faulkenburg [employees of Indiana Bell]. Why he stayed and what he did will never really be known . . . . Mr. Ernst's failure to come in at normal quitting time, plus driving time, put him outside his job. Therefore, his injuries, some 6 hours after his quitting time, did not arise out of and in the course of his employment." Appellant's brief, pp. 25, 26.

In contrast, Ernst testified at the hearing that he believed he was authorized to work overtime at the church based on his prior experience. Once he had begun the installation, the telephone service for the church was disrupted and only the completion of the entire job would have restored service. He stated that he called in and reported he would not be finished by quitting time, but that he could in time complete the task and also disconnect the line at the mobile home park. He testified, "I was cleared to stay with it and finish it up. And that was the understanding."

The evidence was thus in conflict. Furthermore from the evidence there existed a reasonable inference that Ernst's assignment that day was to complete the two calls and return the truck to the garage. While Ernst may have been subject to discipline for misspending time on the first job or for working overtime without permission, he was within the course of his employment when he went to the trailer park, made the disconnection and promptly left to return to the garage. *See Self v. Shirkie Coal Co.* (1929), 89 Ind.App. 673, 166 N.E. 613.

Considering the broad remedial purpose of the Workman's Compensation Act, *Frampton v. Central Indiana Gas Co.* (1973), 260 Ind. 249, 297 N.E.2d 425, and our limited scope of judicial review, *Wayne Adams Buick, Inc. v. Ference* (1981), Ind.App., 421 N.E.2d 733, we cannot say the board erred in making the award.

■ Bell claims that in the absence of evidence showing that someone else made the payments, it was entitled to credit against the award for payments it made to Ernst prior to entry of the award. It argues these benefits (payments) were a sub-

stitute system of insurance under IC 22–3–5–4. That section provides:

"Subject to the approval of the industrial board any employer may enter into or continue any agreement with his employees to provide a system of compensation, benefit or insurance in lieu of the compensation and insurance provided by this act. No such substitute system shall be approved unless it confers benefits upon injured employees and their dependents at least equivalent to the benefits provided by this act, nor if it requires contributions from the employees unless it confers benefits in addition to those provided under this act at least commensurate with such contributions.

Such substitute system may be terminated by the industrial board on reasonable notice and hearing to the interested parties if it shall appear that the same is not fairly administered or its operation shall disclose latent defects threatening its solvency, or if for any substantial reason it fails to accomplish the purpose of this act; and in this case the board shall determine upon the proper distribution of all remaining assets, if any, subject to the right of any part in interest to take an appeal to the Appellate Court."

The record does not contain evidence to establish whether Bell's sickness benefit plan complied with IC 22–3–5–4, whether it was intended to do so, or whether it was ever submitted to or approved by the industrial board.

The burden of proof in these matters, including proof of prior approval by the industrial board, was with Bell. In the absence of any evidence the board properly denied the credit.

Affirmed.

HOFFMAN, P.J., and STATON, J., concur.