Larry SMITH, Appellant,

v.

**HUSSMANN REFRIGERATOR COMPANY, Respondent.**

No. 46933.

Missouri Court of Appeals,
Eastern District,
Division Five.

Sept. 27, 1983.

Lawrence O. Willbrand, St. Louis, for appellant.

Morris B. Kessler, St. Louis, for respondent.

REINHARD, Presiding Judge.

Claimant appeals from the denial of his worker's compensation claim by the Labor and Industrial Relations Commission. The Commission concluded that the claimant was not within the scope and course of his employment at the time of his injury. We reverse.

Claimant had been employed by Star Cooler Company for approximately six months when Star Cooler was sold to the Hussmann Refrigerator Company. The claimant thereafter participated in packing Star Cooler equipment for relocation in the Hussmann plant, although the actual transportation of heavy equipment was carried out by a professional moving company under contract with Hussmann. Commencing approximately two weeks before claimant's accident, claimant began working at the Hussmann plant, primarily as a forklift operator moving relocated equipment. At the time of his accident, claimant believed that he was in the process of being promoted to the position of leadman.

On October 24, 1981, the claimant sustained a back injury at the Hussmann plant

while equipment was still in the process of being moved. On this particular day, claimant reported for overtime work, it being a Saturday, and found that his regular foreman was absent. Claimant admits that the man supervising his work on that day was Mike Oakley, who was the foreman of another part of the production line, located in a different part of the building.

Claimant received his injury from the fall of a charging board. The charging board is a metal object which is approximately 7 to 8 feet high and weighs approximately 500 pounds. Although transported to the Hussmann plant by the moving company the previous day, it had not yet been permanently positioned in the plant. As a consequence, the charging board was tied upright to a railing on the back of a catwalk. The catwalk extended above the cooler production line; employees were required to stand on it while working on the crating portion of the line.

Mr. Oakley instructed claimant and another employee, Mr. Tisi, to proceed to the far end of the building, which was the crating area of the production line, clean up the area and get some production out. At the time, the claimant remarked that his regular foreman had previously instructed him to operate the forklift on Saturday. Mr. Oakley, however, indicated that there was no forklift available for his use, and reiterated that claimant was to clean out the work area and get production started. According to Oakley, during this conversation the claimant twice asked whether the charging board should be moved; both times Oakley responded that the board would be moved on Monday by the moving company. Oakley further testified that the location of the charging board in no way interfered with the operation of the production line.

Claimant claims that the charging board did interfere with the crating operations, and further contends that he heard no direct prohibition against his either using the forklift or moving the board. In any event, claimant, Tisi, and another employee attempted to move the charging board, in the

process of which it fell and severely injured the claimant.

Claimant's injuries required surgical insertion of steel rods in his back. Furthermore, he remained in a partial body cast at the time of his hearing.

Following a hearing before an administrative law judge, the judge made specific findings of fact and concluded that claimant had been instructed not to move the charging board. By implication, the judge found that its location did not interfere with the operation of the production line. Consequently, the judge concluded that the claimant was not injured in the scope and course of his employment and denied benefits. The majority of the Commission adopted this ruling with the dissenting member finding that claimant's conduct fell within the extent and scope of his employment.

In considering this matter, we are mindful that the standards governing our review of decisions of the Labor and Industrial Relations Commission are well settled. The Commission should be affirmed if, after a review of the entire record in the light most favorable to the finding, this court believes that the decision is supported by substantial and competent evidence. *Johnson v. General Motors Assembly Division,* 605 S.W.2d 511, 512 (Mo.App.1980); *Lloyd v. County Electric Co.,* 599 S.W.2d 57, 60 (Mo.App.1980). However, decisions of the Commission which are reached by interpretation or application of law, as distinguished from the facts, fall within the province of this court's review and correction. *Lloyd v. County Electric Co.,* 599 S.W.2d at 60. The question presented, therefore, is whether the Commission correctly applied the law in finding the claimant was outside the scope of his employment. We think not.

The fact that an employee, at the time of receiving his injury, was performing an act specifically prohibited by his employer, does not necessarily deprive him of the right to compensation for his injury. *Cf. Fowler v. Baalmann,* 361 Mo. 204, 234

S.W.2d 11, 16 (1950).[1] In *Fowler* the employee, a pilot, was killed in an airplane crash. At the time of the accident, the claimant had undertaken to fly the employer's plane despite cancellation of his flight by the employer. Thus, the claimant lacked authorization to fly the plane that night. Under these circumstances, the court stated:

> Nor do these facts present an instance where an employee was doing a thing he was employed to do, but was doing it in a manner prohibited by his employer, such as, an employee whose duty it was to oil certain machinery, but who (contrary to his employer's direct and affirmative orders) oiled the machinery while it was in motion. Mere disobedience of an order as to the *detail* of the work in hand or the mere breach of a rule as to the *manner* of performing the work are not generally sufficient to deprive an employee of his right to compensation so long as he does not go out of the sphere of his employment. But compensation cannot be allowed when the employee goes outside of the sphere and scope of his employment and is injured in connection with an activity he has been expressly forbidden to undertake.

In Honnold on Workmen's Compensation, Vol. 1, § 113, it is said: "There are prohibitions which limit the sphere of employment, and prohibitions which deal only with conduct within such sphere. A transgression of a prohibition of the latter class leaves the sphere of employment where it was, and consequently will not prevent recovery of compensation. A transgression of the former class carries with it the result that a man has gone outside of the sphere." Schneider's Workmen's Compensation Text, Vol. 6 § 1581, states that rule in these words: "But where, however the rule (order or prohibition) is one limiting the scope, ambit or sphere of work which the employee is authorized to do, such a violation forecloses the compensability of an injury so sustained." An employer has the unqualified right to limit the scope of a servant's employment and activity and to determine *what* an employee shall or shall not do. The employer likewise has the unqualified right to determine *when* an employee shall do a certain thing. Kasper v. Liberty Foundry Co., Mo.App., 54 S.W.2d 1002, 1005. The employer may terminate an employment. The prohibition which the employer laid down in this case (the direct order expressly cancelling the flight) goes deeper into the relationship of the parties than any mere rule, for it severed utterly and terminated completely the employer-employee relationship for the day. After the order was given and the flight cancelled, in the subsequent act of taking the plane ... and going on the cross-country trip to Kansas City and return, Fowler was not an employee of Baalmann.

*Fowler v. Baalmann,* 234 S.W.2d at 17. (emphasis original).

■ Thus, to properly apply the law, as set forth in *Fowler,* to the present case, we must scrutinize the scope of claimant's activities and assigned tasks prior to this accident. In this regard, the foreman informed

---

1. 1A Larson, Workmen's Compensation § 31.-22, enumerates several instances in which an employee engaged in forbidden misconduct was nevertheless entitled to workmen's compensation.

> Each of the following items of conduct was not only rash in itself, but was specifically forbidden by the employer: sitting upon a fender to operate a dangerous machine instead of standing as ordered; operating a meat-grinding machine with the guard removed; oiling machinery in motion; using alcohol to light a fire; reaching into a machine without stopping it; speeding up iron-moulding to do five hours' work in four; jumping a railing instead of following a stairway; climbing a fence rather than walking 300 feet to the gate; getting on or off a moving vehicle; riding on top of the cab of a truck or on the running board; leaving a trolley in such condition that it might move when a connection was made; washing a car with inflammable liquid without disconnecting the battery; failing to use a respirator and getting lead poisoning from fumes; using an emery wheel for a job for which the employer had said it was unsuitable; using sulphuric acid to clean a urinal instead of Gold Dust; and pouring gasoline into the tank of a motor while the motor was running.

claimant that the forklift was needed at the other end of the plant and would not be available. The foreman specifically instructed the claimant to leave the charging board untouched, since it would be placed by movers on Monday. The board was nevertheless moved by claimant and others, and this movement caused claimant's injuries. Moreover, Oakley testified that he told claimant to run some production, however, prior to that "his job at that—that particular time [the time of the injury] would have been *moving and cleaning up the area* to a degree where some cabinets could be cleaned up and run down the line." Thus, the claimant was responsible for cleaning up smaller items which interfered with the production line, moving these items out of the way, and commencing production on the cooler line. Furthermore, employer's witness, Tisi, said he guessed that claimant was moving the charging board to "get it out of the way"—not out of the way of production, but rather out of the pathway of employees walking in the work area who would otherwise have to walk around it.

Therefore, the employer's own evidence shows that the claimant was assigned two specific tasks: to clean out an area for production and to run some production. The Commission focused largely on the production issue. Yet cleanup was part of the sphere of claimant's assigned duty, and moving the charging board was an act of cleaning up. Indeed, this was claimant's duty at the time of the injury; he was not yet at the production stage. Under these circumstances, that the charging board did not impair production does not in itself affect claimant's scope of employment, since it was nevertheless moved to facilitate performance of his other task.

■ The foreman's order was not an order limiting claimant's sphere of employment, as in *Fowler.* Applying the *Fowler* standard to the employer's evidence, the Commission misapplied the law. The claimant did not disobey the "when" or "what," only the "how." What to do and when to do it determine the sphere of employment,

*Fowler v. Baalmann,* 234 S.W.2d at 17, but "how" the task is carried out falls within that sphere. Disobedience as to how the work is performed, as here, may be grounds for discharge from employment, but it does not remove the activity from the sphere of employment, nor mandate denial of worker's compensation.

Reversed and remanded for further proceedings consistent with this opinion.

V. JAMES RUDDY and RONALD M. BELT, Special Judges, concur.