(No. 58543.—

FONDULAC NURSING HOME, Appellant, v. THE IN-
DUSTRIAL COMMISSION *et al.* (Kim Levi, Appellee).

*Opinion filed February 22, 1984.*

Heyl, Royster, Voelker & Allen, of Peoria (Rex K. Linder and Robert E. Nesemann, of counsel), for appellant.

Goldfine & Bowles, P.C., of Peoria (James E. Bowles and John Lesaganich, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

This is an appeal by the claimant's employer, Fondulac Nursing Home, from a decision of the circuit court of Peoria County reversing a decision of the Industrial Commission in its favor. The Industrial Commission reversed the arbitrator, who decided that the claimant's back injury arose out of and in the course of her employment in a nursing home operated by Fondulac.

As a result of a previous work-related back injury that the claimant, Kim Levi, had suffered while employed by Fondulac, she was unable to return to work for several months. When she came back claimant was given light duties in order to comply with restrictions her physician had placed upon her because of her lumbar strain and in order to protect her against a recurrence of the injury. Her new assignment required her to give treatment to patients and care for their bedsores. The nursing home administrator as well as the assistant nursing director repeatedly instructed her that she was not to lift patients.

Two weeks after she returned to work, the claimant was making rounds which involved assisting patients who wanted to go to sleep. The head nurse at the time claimant was injured was Fondulac's only witness. She testified that the wing of the nursing home in which the claimant was working at the time was one in which most of the patients were up and about and able to transfer themselves into their wheelchairs.

Upon entering the room of one of the patients who normally was able to ambulate without assistance, the

patient asked the claimant for help in pivoting from her wheelchair into her bed. Claimant testified that when she began to assist the patient, she assumed she would be able to do so without actually lifting her. However, in the course of the maneuver the patient collapsed or commenced to fall; in order to save the patient from dropping to the floor and possibly injuring herself, the claimant held on to her and lifted her into bed. The result was that the claimant reinjured her back.

Fondulac contends that claimant's back injury did not arise out of and in the course of her employment. The basis for this contention is that the claimant was instructed by her supervisors that her duties did not include lifting of patients and that she injured herself while doing something she was forbidden to do. Thus, Fondulac contends that the decision of the Industrial Commission that the claimant's injury arose out of an unnecessary risk which her employer had instructed her not to undertake and which her employment did not require was not against the manifest weight of the evidence and should have been confirmed by the circuit court.

The claimant, on the other hand, argues that when she went to the assistance of the patient she did not anticipate it would be necessary for her to lift the patient. However, when the patient commenced to collapse or fall, an emergency arose which required the claimant to lift the patient in order to save her from possible injury and Fondulac from possible liability if she had been allowed to fall to the floor.

In explaining its decision and opinion on review, the Commission stated that it was "obvious that some lifting would very likely be required" when the claimant undertook to assist the patient from her wheelchair. This is not a finding of fact, but only an assumption, and the Commission stopped short of finding that it was a cer-

tainty that lifting would be required. The only basis for the assumption, according to the Commission, was the fact that the patient was sitting in the wheelchair and needed help. However, it failed to note that patients who use wheelchairs vary in their ambulatory capabilities and the kind of assistance they need, a fact which, if it is not intuitively obvious, was established by the testimony in this case of two employees of the nursing home, the claimant and Fondulac's head nurse, who testified from professional experience. The only evidence regarding the nature of the assistance the patient would require was the claimant's testimony that the patient asked for help in pivoting from her wheelchair into her bed on this occasion. In addition to the testimony that this was the only assistance which the patient requested and the claimant planned to offer, the evidence shows that the patient in question was ambulatory and that she lived in an area of the nursing home in which most of the patients were able to transfer themselves into wheelchairs. Thus even if we conceded that whether "some lifting would very likely be required" were a finding of fact by which we as a reviewing court would be compelled to abide if it is not contrary to the manifest weight of the evidence, rather than a speculation of a general nature which would not bind us, the Commission's conclusion regarding the possible need for lifting is against the manifest weight of the evidence in view of the testimony of the only two witnesses who were heard. These were the claimant on her own behalf and the head nurse, called as a witness by Fondulac. Their testimony establishes that, under the circumstances which presented themselves to the claimant at the time the patient requested assistance, the claimant could reasonably have decided that she would be able to help the patient without lifting her. She was entitled to assess the situation as it was presented to her and to decide, as she did, that

in performing this duty she would not be required to do any lifting, and thus would not be assuming an unnecessary risk to herself.

Even assuming that the claimant undertook a task she was not authorized to perform when she attempted to help the patient, the fact that the employer has in general terms forbidden an employee to undertake an act is not by itself sufficient to remove the act from the scope of the employment. (*Imperial Brass Manufacturing Co. v. Industrial Com.* (1922), 306 Ill. 11.) In this case the evidence demonstrates that she would not have lifted the patient had an emergency not arisen when the patient started to fall. The claimant faced a choice at that point of coming to the rescue of the patient or doing nothing and thereby preventing bodily injury to herself but allowing the patient to sustain an injury, perhaps a severe one, while under the care of Fondulac. Her decision and conduct at the time of the emergency served her employer's interest as well as that of the patient by protecting Fondulac's patient and saving Fondulac from a possible suit for injuries the patient might otherwise have suffered.

As a noted commentator on workers' compensation has observed, "the scope of an employee's employment is impliedly extended in an emergency to include the performance of any act designed to save life or property in which the employer has an interest" (1A A. Larson, *The Law of Workmen's Compensation* sec. 28.11, at 5—323 (1983)). Even where "the origin of the emergency was claimant's own act," an employee's injury is compensable when "the immediate occasion of his injury was his attempt to deal with a threat to his employer's property" or other interest (1A A. Larson, *The Law of Workmen's Compensation* sec. 28.12, at 5—331 (1983)), provided that the threat is one not unlikely to arise in the usual conduct of the employer's business and the interest

the employer has at stake is a vital one with respect to his business. In this situation, as Professor Larson explains, the claimant must be viewed as having implied directions from his employer or at least authority to undertake the risk involved in the rescue effort regardless of how the emergency arose. (1A A. Larson, *The Law of Workmen's Compensation* sec. 28.12, at 5—331 (1983).) Because what the claimant did in this case was in the vital interest of Fondulac as her employer and was not a gross deviation from the ordinary tasks of a nursing home employee, it was consequently not beyond the scope of her employment, even if it may have exceeded the limitations placed upon her by Fondulac.

The cases cited by Fondulac are distinguishable. In *Segler v. Industrial Com.* (1980), 81 Ill. 2d 125, the claimant, a metal stamper, was cooking a frozen pot pie for his own consumption in one of his employer's industrial ovens when he was injured. His use of an industrial oven as a microwave oven obviously did not benefit the employer in any way. In *Kensington Steel Corp. v. Industrial Com.* (1944), 385 Ill. 504, a somewhat more difficult case, a former millwright's helper who had been reassigned to another line of work by his employer attempted to fix machinery which was under the exclusive care of the employer's millwrights and which he believed was malfunctioning; the court held that he had stepped out of the course of his employment in so doing because the circumstances did not reasonably indicate that there was an emergency. The circumstances of the case at bar are different. An employee of a nursing home has the implied discretion to take such action as is reasonable and necessary to protect patients from injury resulting from a clearly impending emergency even though the emergency was caused by the employee disobeying instructions from a superior. Were this not the case, an employee who is in a position to save a patient from in-

jury would be faced with an impossible choice between doing so and refraining, against her better judgment and the ethics of her profession, from rendering assistance in order to save herself from an injury for which she could not be compensated. An employee who refrains from acting to save the patient in these circumstances because of limitations placed on her duties by her employer is fulfilling her obligations to neither the patient nor the employer.

Although in its decision and opinion on review the Industrial Commission stated that "[t]his was not an emergency situation," in doing so it obviously was referring to the situation at the time the patient first requested assistance. At that time, as the Commission pointed out, the claimant could have gone to get someone else to render the assistance requested. However, after the claimant decided that she could assist the patient in the pivoting maneuver and the patient then unexpectedly began to collapse or fall, an emergency clearly existed and any finding of the Commission to the contrary would have been against the manifest weight of the evidence.

The decision of the Industrial Commission that the claimant's injury did not arise out of and in the course of her employment was not only against the manifest weight of the evidence but erroneous as a matter of law. The circuit court reached the proper conclusion when it reversed the Industrial Commission's decision; we affirm its judgment and remand the cause to the Commission for proceedings consistent with the views herein expressed.

*Judgment affirmed; cause*
*remanded, with directions.*