**Robert Wade PAGE, Jr.,
Claimant-Appellant,**

v.

**L.A. GREEN, d/b/a L.A. Green Seed
Company, Employer-Respondent.**

No. 13615.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 31, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Feb. 19, 1985.

Application to Transfer Denied
April 2, 1985.

James K. Journey, Kelso Journey, Clinton, for claimant-appellant.

Kenneth H. Reid, Michael J. Patton, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, for employer-respondent.

PREWITT, Chief Judge.

The Labor and Industrial Relations Commission affirmed the award of an administrative law judge which denied appellant's claim for workers' compensation benefits.

Commissioner William F. Ringer wrote the principal opinion for the Commission. It was concurred in by Commission Chairman Terry C. Allen who also wrote a concurring opinion. Commissioner Herbert L. Ford filed a dissenting opinion. These opinions reflect, as did the findings of Administrative Law Judge Winton G. Tracy, Jr., commendable dedication and meticulous consideration of the law and facts presented. That we reach a contrary result is certainly no indication that the prior decisions were not carefully considered and reasoned.

Appellant suffered permanent total disability when he was injured on respondent's premises at approximately 2:45 a.m. on August 14, 1980. He was alone in one of respondent's buildings at the time. Appellant was regularly employed on those premises from 8:00 a.m. to 5:00 p.m. That he was injured by "accident" as that term is defined in the workers' compensation law is not questioned. The Commission found that it was not an accident "arising out of and in the course of his employment", see § 287.120.1, RSMo 1978, and apparently, by

reference to the administrative law judge's findings, adopted his conclusion that appellant was too intoxicated "to perform duties if those duties had arisen out of and in the course of his employment."

The scope of our review is stated in Mo. Const. Art. V, § 18, and § 287.495, RSMo Supp.1982. From them and their predecessors certain well-established principles have developed. Appellate courts review workers' compensation cases in the light most favorable to the award of the Commission and uphold the decision of the Commission if it is supported by competent and substantial evidence. *Blissenbach v. General Motors Assembly Div.*, 650 S.W.2d 8, 11 (Mo.App.1983).

Only when the Commission's award is not supported by substantial evidence or is clearly contrary to the overwhelming weight of the evidence do we disturb it. *Bradshaw v. Brown Shoe Co.*, 660 S.W.2d 390, 392 (Mo.App.1983). However, where the facts on which the decision should turn are not in dispute the award that should be entered becomes a matter of law. *Ikerman v. Koch*, 580 S.W.2d 273, 278 (Mo. banc 1979).

The Commission is charged with the responsibility of passing upon the credibility of witnesses, and it may disbelieve testimony of a witness though no contradictory or impeaching evidence is introduced. *Blissenbach*, supra, 650 S.W.2d at 11. A Commission's acceptance or rejection of part of a witness's testimony cannot be disturbed upon review, unless its acceptance or rejection is against the overwhelming weight of the evidence. Id.

Other principles are also applicable in our review. One of the purposes of the Workers' Compensation Act is to relieve the burden of workers incapacitated by injuries from the public and place the burden upon industry. *Cox v. Copeland Bros. Constr. Co.*, 589 S.W.2d 55, 61 (Mo. App.1979). In interpreting the workers' compensation law we resolve all doubts in favor of the employee. *Barr v. Vickers, Inc.*, 648 S.W.2d 577, 580 (Mo.App.1983).

■ The mandate for liberal construction of the Workers' Compensation Act (§ 287.800, RSMo 1978), means that benefits should be extended to the largest possible class of workers and the denial of those benefits should be decreed to the smallest possible class. *Cox*, supra, 589 S.W.2d at 61.

Appellant worked as a "warehouse laborer" at respondent's Lockwood, Missouri facility. He said that 90% of his work was hauling raw seed "to the cleaners", apparently referring to respondent's seed cleaning machines. Respondent had two of these machines at its Lockwood location, each in a separate building. Respondent has several buildings at this location and operates its seed cleaning machines 24 hours a day.

Appellant testified that on August 13, 1980, following the end of his regular work at 5:00 p.m., he left respondent's premises and went to his apartment in Lockwood. He ate, then slept until awakened by his roommate and another person. He stated he drank two beers with them and then because it was hot, went to sleep on a cot in a yard outside his apartment. Early that morning he was awakened by thunder and lightening. There were large doors on one of respondent's buildings, where appellant had deposited seed earlier that day, and he thought the doors might be open. Because he believed it was going to rain and the seed could get wet, appellant said he decided to check on the doors.

Appellant took his roommate's van and drove approximately a mile to respondent's premises. When he arrived, at least two employees of respondent, both "cleaner operators", were working. One cleaner operator was at the building appellant went to and the other operator was in the building where the other cleaning machine was. Closing the doors when necessary was the cleaner operator's responsibility. One of the doors had been left open, and after closing it, appellant moved some empty burlap sacks "out of the way". After he did this he saw "seed running off the cleaner off the top screen." This could cause seed to be wasted. The cleaner operator had left the building and appellant was alone in it.

Appellant said he went up a ladder to the top of the cleaning machine to sweep the seed "back and forth to make it go down through the screens." A broom is kept up there for this purpose. Appellant said doing this would "unclog the machine". Normally, this is the cleaner operator's responsibility. Appellant said as he neared the end of the ladder he reached for a board so he could pull further up. The board was unfastened, and when he grabbed it he fell backwards, approximately 14 feet, to the floor. When the operator returned, he found appellant lying on the floor. Appellant was taken to a hospital by ambulance. The hospital's records show his "[b]lood alcohol level was 232 mg.%."

On at least two occasions appellant had worked for respondent after his regular hours without compensation. One occasion was authorized in advance. On the other, when seen working by a supervisor, he was instructed to punch the time clock.

The appellant and his roommate testified that appellant had several drinks of whiskey following his injury, perhaps trying to account for appellant's blood alcohol content as found at the hospital. The Commission rejected their testimony, stating that it "finds that the claimant's ludicrous explanation for his acute intoxication which explanation was clearly refuted by all the believable evidence causes the claimant's entire testimony to be incredible and unbelievable." It found that it "is only speculation and conjecture as to why the claimant was at the plant when he was injured at approximately 2:45 a.m." Such a determination could be decisive on review, but it is not here.

Appellant's evidence as to his drinking whiskey following the accident was highly suspect and appeared to be manufactured, but even when the appellant's and his witnesses' testimony is removed, the evidence establishes that appellant was seeking to benefit respondent at the time he was in-

jured by doing a chore necessary and usual in its operation.

There was no dispute that appellant was a conscientious employee. After he was found, a loose board which had been on top of the cleaning machine was no longer there, and the broom kept above the machine had fallen down to the catwalk. Appellant was found lying next to the seed cleaning machine and his injuries indicate that he fell a considerable distance.

Respondent's witness, the warehouse manager at the premises, stated that it was in the furtherance of the company's interest to keep the cleaning machine unclogged. Unclogging the machine was the cleaner operator's duty, but if there was no operator "immediately available", the manager said appellant "would have been permitted to do it, but it was not his responsibility." We believe it is inescapable that at the time he was injured, appellant was intending, perhaps misguidedly, to benefit respondent by unclogging the seed cleaning machine, and any other conclusion is against the overwhelming weight of the evidence.

■ For intoxication to bar appellant's recovery, there must be evidence that at the time he was injured, appellant was "intoxicated to such an extent that it was impossible for him to physically and mentally engage in his employment." *Brown v. Mid-Central Fish Co.,* 641 S.W.2d 785, 787 (Mo.App.1982). See also *Phillips v. Air Reduction Sales Co.,* 337 Mo. 587, 85 S.W.2d 551 (1935); *McCue v. Studebaker Automotive Sales,* 389 S.W.2d 408 (Mo. App.1965); *Coonce v. Farmers Ins. Exch.,* 228 S.W.2d 825 (Mo.App.1950); *O'Neil v. Fred Evens Motor Sales Co.,* 160 S.W.2d 775 (Mo.App.1942). We do not find such evidence in the record.

■ The person appellant and his roommate were drinking beer with said that appellant was "intoxicated that night". She left them at midnight. Appellant and the cleaner operator who saw him just before the accident testified that he was not intoxicated and there is no evidence that he

was to the extent required, unless his blood alcohol content establishes that as a matter of law. We believe it does not. The effect of blood alcohol content can vary widely from person to person and from time to time. That it was well over the amount that constitutes prima facie evidence of intoxication when operating motor vehicles does not establish that it would have been impossible for appellant to physically and mentally engage in his employment. His ability to perform normally might have been affected, but not necessarily to the extent required to make intoxication a defense. Appellant was able to drive to the premises, perform some acts, and talk to the man on duty. Nothing indicates that it was impossible for him to work. We next discuss whether the accident arose "out of and in the course of" appellant's employment.

The Commission determined that appellant was never to work after hours unless specifically authorized to do so by his foreman or superintendent. It found that the evidence did not support his contention that there was an established practice that appellant could work at the plant whenever he desired. It determined that the "credible and believable evidence" was that respondent specifically limited appellant's hours in his employment to between 8:00 a.m. and 5:00 p.m. Monday through Friday, except when he received special permission in advance. There is no contention that he received express permission on this occasion.

■ The terms "out of" and "in the course of" employment are separate tests for compensability. *Blatter v. Missouri Dept. of Social Services,* 655 S.W.2d 819, 823 (Mo.App.1983). An injury arises "out of" employment if it is a natural and reasonable incident of the employment and is the rational consequence of some hazard connected with the employment. Id. An injury is "in the course of" the employment when it occurs within the period of employment, at a place where the employee may reasonably be and while he is reasonably fulfilling the duties of his employment. Id.

Although each case involving whether an accident arose out of and in the course of employment must be decided on its own facts and circumstances, by applying the relevant principles and not by reference to some formula, *Blatter*, supra, 655 S.W.2d at 823, or by "attempting to group compensation problems by fact categories", *Kunce v. Junge Baking Co.*, 432 S.W.2d 602, 607 (Mo.App.1968), prior decisions are helpful in showing how these principles have been applied.

Apparently, in following the principle favoring the employee, recovery was available where an employee was regularly working on the premises, but violated an order in doing an act, *Smith v. Hussmann Refrigerator Co.*, 658 S.W.2d 948 (Mo.App. 1983), where the employee was on the premises, but performing outside his normal duties, *Leone v. American Can Co.*, 413 S.W.2d 558 (Mo.App.1967); *Conyers v. Krey Packing Co.*, 194 S.W.2d 749 (Mo. App.1946), where the activity, after normal working hours, was of only slight benefit to the employer, *Blatter*, supra, and *Yaffe v. St. Louis Children's Hosp.*, 648 S.W.2d 549 (Mo.App.1982), where an injury occurred on the premises, but the employee was not expressly acting for the employer at the time, *Daniels v. Krey Packing Co.*, 346 S.W.2d 78 (Mo.1961); *Jones v. Bendix Corp.*, 407 S.W.2d 650 (Mo.App.1966); *Conklin v. Kansas City Pub. Serv. Co.*, 226 Mo.App. 309, 41 S.W.2d 608 (1931), or where an employer knew of or authorized work beneficial to it outside regular working hours, *Coy v. Sears, Roebuck & Co.*, 363 Mo. 810, 253 S.W.2d 816 (1953); *Blair v. Armour and Co.*, 306 S.W.2d 84 (Mo. App.1957).

Other jurisdictions reflect a similar tendency to allow recovery if the employee was hurt during activity of benefit to the employer. See *Lizama v. Workmen's Compensation Appeals Bd.*, 40 Cal.App.3d 363, 115 Cal.Rptr., 267 (1974); *Department of Water and Power v. Workmen's Compensation Appeals Bd.*, 252 Cal.App.2d 744, 60 Cal.Rptr. 829 (1967); *Laing v. Occidental Life Ins. Co.*, 244 Cal.App.2d 811, 53 Cal. Rptr. 681 (1966); *Scott v. Pacific Coast Borax Co.*, 140 Cal.App.2d 173, 294 P.2d 1039 (1956); *Indiana Bell Tel. Co. v. Ernst*, 444 N.E.2d 1258 (Ind.App.1983); *Wilson v. Wizor*, 544 S.W.2d 231 (Ky.1976); *Turner Elkhorn Mining Co. v. Goble*, 506 S.W.2d 521 (Ky.App.1974); *In re Canavan's Case*, 364 Mass. 762, 308 N.E.2d 534 (1974); *Employers Mutual Liab. Ins. Co. v. Department of Indus., Labor & Human Relations*, 52 Wis.2d 515, 190 N.W.2d 907 (1971).

The Commission primarily based its decision on *Fowler v. Baalmann*, 234 S.W.2d 11 (Mo. banc 1950). That opinion states that an employer "has the unqualified right to determine *when* an employee shall do a certain thing." 234 S.W.2d at 17. In *Baalmann*, the employee, a pilot, was specifically told not to fly during a storm, but did so anyway. Here, appellant was not violating a specific order not to work at the time of his injury. That case can also be distinguished on a basis not considered by the Commission. Larson states it thusly:

> It is too obvious for discussion that emergency efforts to save the employer's property from fire, theft, runaway horses, destruction by strikers, or other hazards are within the course of employment. The fact that the rescue effort takes place outside of working hours does not detract from its work-connected status.

1A Larson, Workmen's Compensation Law, § 28.11, pp. 5–324—5–326, (1982).

Cases applying this principle in allowing recovery to off-duty employees include *Martinez v. Workers' Compensation Appeals Bd.*, 15 Cal.3d 982, 127 Cal.Rptr. 150, 544 P.2d 1350 (1976); *Cook v. Bangor Hydro-Elec. Co.*, 402 A.2d 64 (Me.1979) and *Meaney v. Keating*, 200 Misc. 308, 102 N.Y.S.2d 514 (1951), affd., 279 App.Div. 1030, 113 N.Y.S.2d 240 (1952). See also *O'Leary v. Brown-Pacific-Maxon*, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951) (recovery allowed where act in emergency of no benefit to employer); *Fondulac Nursing Home v. Industrial Comm'n*, 99 Ill.2d 519, 77 Ill.Dec. 447, 460 N.E.2d 751, 753–

754 (1984) (employee on duty but scope of employment impliedly expanded in emergency situation despite express prohibition). Other "on duty" cases allowing recovery in "emergency" situations include *Food Products Corp. v. Industrial Comm'n.*, 129 Ariz. 208, 630 P.2d 31 (1981) (act not of benefit to employer); *Green v. DeFuria*, 19 N.J. 290, 116 A.2d 19 (1955) (slight, if any benefit to employer); *Hiers v. Brunson Const. Co.*, 221 S.C. 212, 70 S.E.2d 211 (1952) (employee went beyond normal duties in repairing roof to protect property).

It was unquestioned, and respondent's witnesses so stated, that appellant was a good, enthusiastic employee, "one of the best", to such an extent that he had been criticized by other employees. Without being asked, at least twice he had worked after-hours to preserve and protect respondent's property. Both times his efforts were accepted and although he had been told not to work without punching the time clock, he had never been expressly told not to come to the premises outside his normal hours. Respondent had a policy to restrict overtime, but it was not always prohibited.

Perhaps appellant's judgment was clouded by alcohol, but he had an intent to help respondent's interest. Should recovery be denied if his belief that he should unclog the cleaning machine was wrong? 1A Larson, supra, § 28.13 at p. 5–333, indicates it should not be. It states:

It is a well-established principle, even at common law, that the actor's judgment about the existence of an emergency and how to meet it should not be too severely judged in retrospect. He may get the benefit of the emergency doctrine even if the only emergency was in his imagination, if he acted in good faith.

There is no indication that appellant acted otherwise than in good faith, and that he was genuinely, if perhaps misguidedly, trying to protect his employer's property. Perhaps his acts were unnecessary or he could be reprimanded for doing so when he had been drinking intoxicants. That he appropriately could be reprimand-

ed for his actions does not mean he was not in good faith doing them for his employer. *Cf. Smith*, supra, 658 S.W.2d at 951; (disobedience of order may be grounds for discharge, but that does not mandate denial of workers' compensation); *Indiana Bell Tel. Co.*, supra, 444 N.E.2d at 1260 (same).

Appellant displayed an interest in his employer's business that is always desired but too seldom received. While the emergency might have been greater in *Young v. Mississippi River Power Co.*, 191 Iowa 650, 180 N.W. 986 (1921), appellant's attitude here was no less desirable. There the court stated, 180 N.W. at 987:

Generally speaking, the employer of labor rightfully expects from his employé something of a spirit of loyalty and a reasonable degree of care for the protection of the employer's property in or about which his services are engaged. The hired servant is something more than a mere machine or automation, and he brings to the service of the hirer not merely a pair of hands, but hands plus brains and conscience which will forbid an honest employé to stand idly by refusing to interpose the slightest effort to save his employer from irreparable injury or loss for no better reason than that the strict letter of his contract does not require such action on his part. Such terms are rarely, if ever, expressed in the words of the agreement between employer and employé; but it is at least what, for want of a better term, we may call a moral implication in every contract of hire, and the employé, no matter what may be his rank or station or what may be the prescribed limit or range of his ordinary duties, who discovers imminent peril or calamity threatening his employer in person or property, and without stopping to debate with himself whether he will respond to the emergent call upon his manhood, at once hastens to avert the damages as best he may, is not a mere intermeddler or volunteer, and the injury to which he thus exposes himself arises out of and in the course of his employment within the meaning of the statute,

and that, too, even though in the stress of the emergency he disregards some of the general rules prescribed for the control of his conduct under normal conditions.

It might appear that assessing workers' compensation benefits against respondent is too severe in that an employer should not be responsible for injuries to a somewhat intoxicated employee, who voluntarily comes on the premises and performs work which may not be absolutely necessary. However, we believe it is fairer, and intended under the law, to require the employer to pay workers' compensation benefits in the situation presented here. The loss should be borne by respondent for whose benefit appellant was acting at the time of his injury, and not by some other person or entity.

Obviously, if appellant had not been employed by respondent, he would have had no occasion to have been concerned about the seed. Perhaps his judgment was affected, but respondent got the benefit of appellant as a good employee, and it should also stand the burden that a proper attitude and a mistake in judgment may have caused.

Appellant's attitude toward his job and his attempting to unclog the cleaning machine, for whatever reason he went to respondent's premises, is confirmed by the evidence. There is no evidence inconsistent with those facts. Liberally construing § 287.120.1 in favor of appellant, his accident arose out of his employment and in the course of it. As an employee he was attempting to protect respondent's seed by unclogging the cleaning machine. Unclogging it was a natural and reasonable incident of his employment and his injury the rational consequence of the hazards of doing so. Thus, his accident arose "out of" his employment. Giving appellant the benefit of the doubt in an "emergency" situation, the accident arose "in the course of" his employment. The period that he would be in the course of his employment was expanded due to his desire to protect the seed and because of that he was at a place where he might reasonably be and was reasonably fulfilling the duties of his employment at the time of his injury.

The award is reversed and the matter remanded to the Labor and Industrial Commission with directions that it enter an award in favor of appellant for the benefits provided by the workers' compensation law due to his injury.

TITUS, P.J., and FLANIGAN, J., concur.

GREENE, J., recused.