**Bobby HALL, Claimant–Appellant,**

v.

**WAGNER
DIVISION–McGRAW–EDISON,
Employer–Respondent.**

**No. 53134.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 26, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 8, 1988.

Case Transferred to Supreme Court April 19, 1988.

Case Retransferred to Court of Appeals Sept. 20, 1988.

Original Opinion Reinstated Sept. 23, 1988.

John C. Healy, St. Louis, for claimant-appellant.

Robert W. Herr, St. Louis, for employer-respondent.

PUDLOWSKI, Judge.

Workers' Compensation claimant appeals an order of the Labor and Industrial Relations Commission (Commission) denying claimant's motion to reopen due to change in circumstances. The sole question presented for review is whether there is substantial and competent evidence on the record to support the action of the Commission.

Claimant had been employed by respondent's foundry since 1967. In 1981 he was diagnosed with pneumoconiosis, an occupational lung disease that results from inhaling industrial dust. In November of that year claimant made a claim for Workers' Compensation against his employer. A hearing was held in November of 1983 before an Administrative Law Judge (ALJ) of the Division of Workers' Compensation. In February 1984, claimant was awarded compensation based on the finding that he sustained 75 percent permanent partial disability due to his lung condition. On August 22, 1984, the Commission confirmed this award.

On February 24, 1986, claimant filed an application to reopen due to change of circumstances under Section 287.470 RSMo stating that his condition had progressed so as to justify an award for permanent total disability. A hearing on the issue was held before an ALJ of the Division of Workers' Compensation on claimant's motion to reopen. Based on the record of that hearing the Commission denied claimant's motion on April 27, 1987.

In reaching its 2–1 decision, the Commission found claimant's testimony at the hearing to be identical in all respects to his testimony at the November 1983 hearing. Further, the Commission adopted the findings of Dr. Martin Davis, employer's expert witness, who felt that claimant's condition was unchanged from his initial assessment. Claimant now seeks review of the order of the Commission on two grounds: (1) the Commission erred in its analysis of claimant's testimony; and, (2) in adopting the findings of Dr. Davis and rejecting the findings of Dr. Robert Griesbaum, claimant's treating physician, a Board certified pulmonary specialist.

We are required by statute and case law to afford substantial deference to the findings of the Commission. The scope of our review is constrained by Section 287.495 RSMo which provides in pertinent part:

Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may

modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

The reviewing court must view the record as a whole in the light most favorable to the decision of the Commission and must uphold that decision if it is supported by competent and substantial evidence. *Page v. Green*, 686 S.W.2d 528, 530 (Mo. App.1985); *Blissenbach v. General Motors Assembly Div.*, 650 S.W.2d 8, 11 (Mo.App. 1983). Further, the Commission is charged with passing on the credibility of all witnesses and may disbelieve testimony absent contradictory evidence and the rejection or acceptance of any such lay or expert testimony cannot be disturbed on review unless its acceptance or rejection is against the overwhelming weight of the evidence. *Page*, 686 S.W.2d at 530; *Blissenbach*, 650 S.W.2d at 11. This is true despite the fact that the Commission does not see or hear the witnesses. *French v. Ford Motor Co.*, 720 S.W.2d 24, 26 (Mo.App.1986). However, we also recognize that one of the purposes served by the Workers' Compensation Act is to shift the burden of accommodating the injured worker from the public sector to industry where it rightfully belongs. Accordingly, in interpreting the Workers' Compensation law we resolve all doubts in favor of the employee. *Page*, 686 S.W.2d at 530.

In order for a claimant to succeed in obtaining a modification of an award based on change of condition as provided by Section 287.470 RSMo the claimant must show that since the original award, some element of disability or some symptom not contemplated at the time of the original hearing has made his condition grow gradually worse or has caused him to suffer relapse. A continued incapacity of the same kind and character from the same injury is not a change of condition within the meaning of the statute. *Blissenbach*, 650 S.W.2d at 11.

While mindful of the stringent standard of review and substantial deference mandated by statute and case law, our review of the record leads to the inescapable conclusion that the finding of the commission was unsupported by substantial evidence and against the overwhelming weight of the evidence.

Two witnesses testified at the hearing of July 31, 1986. Bobby Hall, the claimant and Evonne Hall, the claimant's wife. Both Dr. Robert Griesbaum, claimant's treating physician and Dr. Martin Davis, examining physician for the employer testified by deposition.

Claimant remains under the care of Dr. Robert Griesbaum, whom he visits every three months. Claimant acknowledged that the symptoms he complains of at the present time were present to a certain degree at the time of the 1983 hearing. Claimant also admitted that he felt there was no change in the weakness he experiences in his legs on exertion or the number of stairs he is able to climb. Further, he reported no change in the nature of the chest pains he suffers or his sleeping difficulties. He no longer requires prescription medication for pain, but is able to control pain with aspirin.

On the other hand, claimant testified to several significant changes in his condition that reflect the progression of his disease. In the past claimant became tired and light-headed on exertion, now he is constantly tired and incessantly light-headed. Although the number of stairs claimant can climb has not changed, he experiences increased shortness of breath upon climbing them. In the past he could tolerate light yard work and household chores, now he is unable to make a bed, do yard work, wash his car or wash more than a few dishes at a time. Previously his shortness of breath was relieved simply with rest, now he must resort to taking oxygen, which was prescribed in 1986, to relieve his shortness of

breath. He has had to decrease the frequency of his prescribed exercise regimen from once a day to every other day because he gets light-headed. In order to relieve the light-headedness that results from the exertion, claimant must use oxygen after each exercise session. He testified that he is required to go to the hospital more frequently for breathing tests. Temperature extremes now cause an increase in shortness of breathing as compared to his previous condition. In 1983 claimant's bedroom was on the second floor of their apartment. The couple has since moved and claimant's bedroom is now on the first floor of their apartment.

Evonne Hall, claimant's wife, also testified as to changes she has noticed in her husband's condition. She testified that he appears to be more tired and listless than he was in the past and appears to do everything more slowly. He can no longer do light yard work which he was able to do in 1983 and seems to be in perpetual pain. He has more difficulty perambulating up and down stairs and becomes dizzy and uncoordinated more often. Because the claimant cannot tolerate walking even short distances the couple can no longer take walks together.

Dr. Robert Griesbaum is a board certified pulmonary specialist and has been treating claimant since 1983. Dr. Griesbaum feels that claimant's disease has progressed significantly since 1983 to the point that claimant is now totally disabled. While claimant has been able to achieve cardiovascular conditioning by faithful adherence to a prescribed exercise regimen, his lungs continue to deteriorate. This significant deterioration is evidenced by the results of pulmonary function tests which reveal that claimant's blood oxygen saturation is more abnormal now on light exercise than it was in 1983. During light exercise in 1983 his blood oxygen saturation dropped to a low of 88 percent. In 1986 that value dropped to 83 percent. Dr. Griesbaum stated that levels below 85 percent indicate clinical instability that could result in brain dysfunction, cardiac arrhythmia, myocardial infarction or cardiac standstill. For that reason, Dr. Griesbaum

prescribed home oxygen to prevent the effects of this instability.

In 1983 Dr. Griesbaum asserted, based on the results of pulmonary tests, that Hall could tolerate only a sedentary job. Similar tests performed during January of 1986 reveal that Hall now could not sustain the requisite energy level per eight hour day to hold even a desk job. In Dr. Griesbaum's expert opinion claimant is now totally and permanently disabled and surmises that in the future claimant's disease will continue to progress resulting in the need for continuous oxygen therapy and acute illnesses requiring hospitalization. Dr. Griesbaum testified that the tests performed by Dr. Davis were insufficient in that a DLCO should have been performed. The DLCO test measures the capacity for oxygen exchange between the lungs and the blood and is valuable in assessing the extent of disability resulting from interstitial lung disease, from which claimant suffers. DLCO tests performed on claimant in 1983 show that he performed at 33 percent of the predicted value. The same test done in 1986 revealed that he performed at 45 percent of predicted value. Both figures are indicative of severe reduction in pulmonary functioning and the slight difference in values was insignificant. While Dr. Griesbaum recognized that reports of severity of shortness of breath are subjective to a certain degree, his opinion was based primarily on the objective results of the oxygen tests performed during exercise.

Dr. Martin Davis was the sole witness to testify on behalf of the employer. Davis specializes in internal medicine and has seen claimant only three times. His most recent examination of claimant was in June of 1986. During that visit, Davis examined him and performed several tests. The results of chest x-rays and blood tests were essentially normal. Results of exercise tolerance testing were 60 percent of normal. The same test revealed a forced expiratory flow rate that was 34 to 53 percent of predicted value. Results of pulmonary function testing revealed that claimant was functioning at 52 percent of the predicted

value. Davis opined that exercise tolerance tests are best used to assess obstructional type lung disease, but then noted that claimant's disease is chiefly interstitial. Dr. Davis conceded that the DLCO is a good test by which to assess claimant's lung disease and had ordered the test to be run. When claimant went to the hospital to be tested at Dr. Davis request, the machine was broken and the test was never taken. Dr. Davis advised the employer's attorney about the malfunction and failure to test the claimant. The attorney thought the result from the previous test was sufficient since it measures essentially the same thing, i.e., blood oxygen saturation level. Dr. Davis' test showed the claimant's oxygen saturation level to be 91 percent. Dr. Davis testified that he was aware of the exercise tolerance test results obtained in January 1986 and if the 83 percent blood oxygen saturation value obtained by Dr. Griesbaum was correct then Hall would indeed require oxygen supplementation and would be totally disabled. Although Dr. Davis testified that the exercise tolerance test measures the same pulmonary function as the DLCO test, he made his disability report without including the exercise tolerance test results and without reference to the test. He relied solely on the pulmonary function test results, which he stated previously was not a particularly good indicator of interstitial lung disease.

Despite his findings, Dr. Davis concluded that there was no change in the claimant's condition. This medical conclusion does not survive close scrutiny. Dr. Davis agreed that the DLCO test was a good test but it was not performed. He testified that he examined the claimant at his office on June 30, 1986 for purposes of diagnostic evaluation and later sent him to a hospital for a battery of pulmonary function tests. One test was not taken and the result of the other was omitted from the report on which he based his testimony and eventually submitted to the commissioner. Further, the tests that Dr. Davis performed at his office were not considered the most accurate means of assessing the claimant's condition.

From a review of the above evidence and the total record we conclude the result of the Labor and Industrial Relations Commission is not supported by substantial evidence and is clearly contrary to the overwhelming evidence.

The denial of claimant's motion to reopen based on his changed condition is reversed and the matter is remanded to the Commission for further findings consistent with this opinion.

STEPHAN, P.J., and DOWD, J., concur.