(No. 25614.—)

THE HEYMAN DISTRIBUTING COMPANY, INC., Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (HERMAN GOLD *et al.* Plaintiffs in Error.)

*Opinion filed February 14, 1941—Rehearing denied April 2, 1941.*

J. W. HORWITZ, for plaintiffs in error.

PEREGRINE & BRUEGGER, for defendant in error.

Mr. JUSTICE FARTHING delivered the opinion of the court:

On *certiorari,* the superior court of Cook county reversed and set aside an award of the Industrial Commission in favor of plaintiffs in error, the parents and dependents of Seymour Gold, the deceased employee of the

Heyman Distributing Company. We granted a writ of error to review its order.

The proof shows that for about two weeks prior to his death, Seymour Gold, a boy seventeen years old, was employed by the company as a stock room worker. The employer occupied the first and seventh floors of the building. Gold worked on the first and seventh floors and in the basement. It was part of his duty to take merchandise wherever directed by his superiors. There were two elevators in the building, side by side, known as the east and the west ones. The only regular elevator operator usually operated the west one. To raise, lower or stop the elevator from any floor, it was necessary to reach in the shaft and pull the cable. There was also an automatic stop at the top of the shaft. The evidence is that no one but the regular operator was authorized to operate the east elevator, unless given permission by the building engineer. It appears that several people not connected with this employer had received such permission. However, Samuel Reisberg, a stock room foreman for the Heyman Distributing Company, was the only one of its employees who had permission to operate it and the only one of them, who had, in fact, been seen to use it. Five boys worked under him. Reisberg testified that the first or second day Gold worked for him, he told Gold not to operate the elevator.

On the morning of the fatal accident, Reisberg and Gold had hauled some merchandise from the entrance on the first floor and deposited it close to the west elevator. Reisberg told Gold to wait for that elevator and then take the merchandise to the basement. Reisberg left Gold with the merchandise and walked to the basement. At that time, the west elevator was in the upper part of the building. The door to the shaft of the east elevator was closed and that elevator was in the basement. A few minutes later, Gold's body was found in the basement pit of the east shaft. The doors to this shaft on the first floor were

open and the elevator was at the automatic stop at the top of the building. There was blood and hair on the shaft wall between the first and second floors, indicating that Gold had been caught between the wall and the elevator, carried up to the second floor and then dropped.

Plaintiffs in error contend, first, that the evidence does not show Gold was attempting to operate the elevator. They argue that he may have been only looking down the shaft to see where it was, and someone else on another floor may have pulled the cable at that instant. The facts may be established by circumstantial as well as direct evidence, and the greater or less probability, leading on the whole to a satisfactory conclusion, is all that can reasonably be required to establish controverted facts. (*Consumer's Co.* v. *Industrial Com.* 364 Ill. 145.) But it is also true, as is pointed out in that case, that the burden rests upon the claimant to establish his case by competent testimony, and an award must be based upon something more than conjecture. It cannot rest upon speculation or a choice of two views equally compatible with the evidence. (*LaSalle County Carbon Coal Co.* v. *Industrial Com.,* 356 Ill. 421.) The burden was not on the employer to prove that the decedent pulled the cable. There is no testimony in the record that leads to a reasonable conclusion that anyone else did so. However, in the view we take it is unnecessary for us to determine whether Gold or someone else pulled the cable.

This brings us to the principal question of whether the accident arose out of and in the course of the employment. Gold was told not to operate the elevator, and we will assume he was violating this instruction when he was killed. The decisive issue is whether he was, at the time of the accident, violating a rule while still in the scope of his employment, or whether the transgression took him outside its sphere. If the former is true, plaintiffs in error are entitled to compensation, although the employee was

violating a rule of his employer; if the latter, they cannot recover. (*Great Atlantic and Pacific Tea Co.* v. *Industrial Com.* 347 Ill. 596.) There is no dispute as to this principle of law. However, difficulty often arises in applying it to the facts of a particular case, inasmuch as many times the difference is only one of degree.

Plaintiffs in error have cited four cases in which it was held that a violation by an employee of a rule or instruction of the employer did not take the employee out of the sphere of his employment, and hence the injuries were compensable. (*Imperial Brass Manf. Co.* v. *Industrial Com.* 306 Ill. 11; *Union Colliery Co.* v. *Industrial Com.* 298 id. 561; *Chicago Railways Co.* v. *Industrial Board,* 276 id. 112; *Republic Iron and Steel Co.* v. *Industrial Com.* 302 id. 401.) In the *Imperial Brass Manf. Co. case,* the employee was a janitor, who was killed by the fumes from sulphuric acid he was using in cleaning a urinal. It was his duty to clean the urinal but he had been instructed not to use sulphuric acid. We pointed out that he was doing exactly the thing he was employed to do, but violated a direction as to the manner of doing it. In the *Union Colliery Co. case,* the deceased was employed as top cager in a coal mine, whose duties on top were to land the cage, roll the car into a dumper, and dump it. He also had some duties at the bottom of the mine. He usually walked down the stairs and came up on the cage. He was killed while riding the cage with a loaded car on it, to the top. This was no violation of a company rule, but this court assumed that a statute making it unlawful to ride on a cage having a car on it was equivalent to a company rule. It was held the employee was within the sphere of his employment. In the *Chicago Railways Co. case,* the employee was a street car motorman. He was under the trolley, adjusting it so as to furnish current for moving the car into the barn when the car suddenly started forward and killed him. He violated a rule by not leav-

ing the car in such condition that it would not have started forward when he adjusted it. This was held to be mere negligence. He had the right to adjust the trolley. In the *Republic Iron and Steel Co. case,* the employee was given a letter to take to the station to mail. He was instructed to take a street car, but instead he walked. He was killed by a train at the station. He was doing the errand he was told to do.

Defendant in error has cited four cases in which it was held the employee was not acting within the sphere of his employment at the time of the injury. (*Dietzen Co.* v. *Industrial Board,* 279 Ill. 11; *Newberry* v. *Industrial Com.* 341 id. 554; *Great Atlantic and Pacific Tea Co.* v. *Industrial Com. supra; Atlas Linen Supply Co.* v. *Industrial Com.* 348 Ill. 69.) In the *Dietzen Co. case,* the employee's job was to take pieces out of a box, polish them on a buffing machine, and then put them in another box. Below was an exhaust system which blew out the refuse. They were separate machines. In order to enter the exhaust machine, it was necessary to remove a tight-fitting cap and reach inside the pipe. The employee dropped a piece of metal in the exhaust system and a fan injured his hand when he reached inside the pipe. He had been instructed not to use the exhaust machine but to call another employee if it needed attention. It was held the work of polishing was clearly distinct from the act of putting his hand into the exhaust pipe to clean it out or remove an article from it. In the *Newberry case,* the employee was night watchman of a building. He carried a lantern and he was instructed to walk from floor to floor and not to use the elevator. When he attempted to use the elevator, he was killed and it was held he was acting without the scope of his employment. In the *Great Atlantic and Pacific Tea Co. case,* the employee was a baker. In the room were several large windows and exhaust fans which could be reached from the floor. There were also some small windows at the

top which could be opened only by climbing. The bakers had been instructed not to open the latter, but the employee attempted to and was injured. It was held the ventilation of the room was not within the scope of his employment. In the *Atlas Linen Supply Co. case,* the employee was unquestionably acting beyond the scope of his employment, and that case will not be discussed.

A careful examination of these cases shows that Gold's act when he attempted to use the elevator contrary to instructions was not a thing that took him out of the scope of his employment. Like the letter carrier, the top cager at the mine, the street car motorman, and the urinal cleaner, he was attempting to do the work he was employed to do but merely violated a rule as to the manner of doing it.

The judgment of the superior court is reversed and the cause is remanded, with directions to confirm the award of the commission.

*Reversed and remanded, with directions.*