In the Matter of the Claim of Delma Hamilton, Widow of Lee Hamilton, deceased employee of Swigart Coal Mine, Made Under "Workmen's Compensation Law."

MRS. DELMA HAMILTON, widow of LEE HAMILTON, Plaintiff in Error,

**v.**

SWIGART COAL MINE, Defendant in Error.

(No. 2241; Nov. 23, 1943; 143 Pac. 2d 203)

486

For the plaintiff in error there was a brief and an oral argument by Vincent Mulvaney, of Casper, Wyoming.

For the defendant in error there was a brief and an oral argument by J. F. Mahoney and D. W. Ogilbee, both of Casper, Wyoming.

## OPINION

KIMBALL, Chief Justice.

This is a proceeding in error for review of an order disallowing the claim of the dependent family of a deceased workman for compensation under the Workmen's Compensation Law, § 124-101 et seq. R. S. 1931. The workman, Lee Hamilton, who was employed as a miner in a coal mine operated by the employer, Ross A. Swigart, died from injury received when he was struck by a coal car. The employer contested the claim on the ground that the injury was not a result of the employment, and was due solely to the culpable negligence of the workman in being at a place where he had no duty to perform and where he had been forbidden to go. The issue was tried in the district court without a jury. The judge found that the injury was due solely to the culpable negligence of the workman; disallowed the claim, and later denied a motion for a new trial. The main question here is whether there was substantial evidence to support the finding of the trial judge.

The mine is not on a railroad and is operated during only a part of the year by a working force of eight or nine men besides Swigart who acts as his own foreman or superintendent. It has two converging slope entries, one called the manway, the other the haulage-way. The manway is a small tunnel about 60 yards in length, four feet wide and five feet high, running east from its portal which is near a cluster of buildings (boarding house and bunk-houses) to a place in the mine where the manway and haulage-way come together forming what is called the "junction." The haulage-way is a tunnel whose portal is near the tipple and hoist house, about 70 yards southeast of the portal of the manway. From its portal, the haulage-way runs northeast to the junction, a distance of about 75 yards,

and thence continues in the same direction to the place where coal was being dug, about 140 yards northeast of the junction.

The manway contained no car tracks or machinery, and was used exclusively as a way of travel between the surface and the junction. It was safe for that use, although the men in walking through it were put to the trouble of stooping.

The haulage-way from its portal to the junction was intended for use as a passageway for coal cars that ran back and forth on a narrow gauge track. The cars were attached to a cable that wound on a drum as the cars were pulled to the surface and unwound as they went back by gravity pulling the cable. Power for the hoisting apparatus came from a gasoline engine operated by the hoist man at the hoist house, about 30 yards from the portal of the haulage-way.

The haulage-way between the portal and the junction was narrow, with very little clearance space between the sides of cars and the side walls of the tunnel. Its use as a travel-way for miners going to and from the working place in the mine was very hazardous and was positively prohibited by the employer. The only employees permitted to enter that part of the haulage-way were the hoist man and the rope rider who went there to inspect and to keep the car track free of obstructions.

A bulletin posted on the bulletin board, for the information of the workmen, contained the statement: "The Swigart Mine is Provided with a Manway. Use It." On a cross-timber above the portal of the haulage-way there was a large sign reading: "Danger. No Admittance," and on a post "as you look down the portal" there was another large sign reading: "Danger. Keep Out."

Hamilton was employed by Swigart September 24,

1941, as a miner, and worked until October 1, 1941, when he was fatally injured. His duties were to dig coal, load the coal in cars and push the cars into the main entry at a considerable distance below the junction. The testimony showed clearly that he was not employed to do any work that required him to go into the haulage-way above the junction, and that he was expressly forbidden to go there. The day he was employed, Swigart accompanied him about the mine; called his attention to the bulletin board and the signs at the portal of the haulage-way; told him that the signs meant just what they said; instructed him always to use the manway in going from the surface to the junction, and warned him that the penalty for use of the haulage-way for that purpose was discharge.

On the same day, the rope rider told Hamilton "to use the manway always—never to use the haulage-way . . . that it was plain suicide to go there, especially if there was a car on top." Two or three days before the accident Hamilton was seen in the haulage-way by another miner who told him that if Swigart found him using the haulage-way, "it meant immediate discharge." The fact that Hamilton had been seen in the haulage-way was not known to Swigart until after the accident of October 1. There was no evidence to require a finding that Swigart had ever relaxed the rule forbidding the use of the haulage-way as a travel-way, or that violation of the rule had ever been sanctioned or condoned. One miner had been discharged by Swigart for transgression of the rule.

Shortly after noon on October 1, about the time the mine employees had finished eating dinner at the boarding house, a customer, Miller, in company with his wife, came to the tipple for a load of coal. The hoist man, whose duties included all operations necessary in making a sale, including hoisting, screening, weighing and loading the coal, went from the boarding house to

the hoist house to wait on the customer. Two car-loads were needed. The first was hoisted, dumped and the empty car returned without incident, but when the second empty car was returned it went only part way down, indicating to the hoist-man that it had jumped the track. On investigation, the rope rider found Hamilton unconscious under the derailed car in the haulage-way, about 15 feet above the junction. Hamilton died without regaining consciousness, as he was being taken to a hospital.

The testimony tending to explain Hamilton's presence at the place where he was injured was substantially as follows: He came from the boarding house to the hoist house while the hoist man, in the presence of Miller, was operating the hoist. He was having some trouble with his miner's lamp, and said something to Miller about having put the reflector on the lamp backwards. He left the hoist house without having said anything to explain why he was there, and his later movements were noticed by Mrs. Miller only. She testified that when the second loaded car was pulled out of the haulage-way, Hamilton was standing near the portal, and when the car was on the top of the tipple, being unloaded, he walked down the haulage-way. She evidently did not understand the portent of this act, and said nothing about it until after the accident.

The constitutional amendment of 1914 (Wyo. Const. Art. 10, § 4), which made provision for the enactment of the Workmen's Compensation Law, directed that compensation be paid to each person injured in extra-hazardous employment, or to the dependent families of those who die as the result of such injuries, "except in case of injuries due solely to the culpable negligence of the injured employee." This exception is repeated several times in the statutes (§§ 124-102, 124-112(4), 124-113, 124-120), but there is no legislative definition of "culpable negligence." In some cases it has been

urged that the word "culpable" has the mild meaning of "blamable" (see Hotelling v. Fargo-Western Oil Co., 33 Wyo. 240, 238 P. 542), but that meaning was rejected in Fuhs v. Swenson, 58 Wyo. 293, 131 P. 2d 333, where it was said, among other things, that the words "culpable negligence," as used in our law "may sensibly be held to have a meaning practically the same as the phraseology of the English Act or most American Acts, which employ the English statute as their model in the use of the terms used in this connection * * *." 58 Wyo. 307, 131 P. 2d 338. The phraseology of other acts to which we referred is "serious and wilful misconduct," and decisions in other jurisdictions under those acts on the question of the workman's serious and wilful misconduct, may be considered as relevant on the question of a workman's culpable negligence under our law.

The supreme court of Connecticut, in Gonier v. Chase Companies, 97 Conn. 46, 115 Atl. 677, 19 A. L. R. 83, gave a satisfactory explanation of the term "serious and wilful misconduct," saying, among other things: "Misconduct is any improper or wrong conduct. And when such misconduct is not trivial, but grave in character, it becomes the serious misconduct of the statute; that is, improper conduct of a grave and aggravated character. Whether misconduct is serious is to be determined from its nature, and not from its consequences. (Citing Johnson v. Marshall, Sons & Co. (1906) A. C. 409, 5 Ann. Cas. 630. ) Misconduct which exposed the deceased to serious injury would be serious misconduct. Not only must the misconduct be of this grave character, but, under the statute, it must also be wilful. By wilful misconduct is meant either intentional misconduct—that is, such as is done purposely, with knowledge—or misconduct of such a character as to evince a reckless disregard of consequences to himself, by him who is guilty of it.

(Citing Burns' Case, 218 Mass. 8, 105 N. E. 601, Ann. Cas. 1916A, 787, 5 N. C. C. A. 635, and other cases) . . . Ordinary negligence could never be even serious misconduct, much less wilful misconduct. . . . No misconduct which is thoughtless, inadvertent, or of the moment, and none which arises from an error of judgment, can be 'serious and wilful misconduct.' (Citing Johnson v. Marshal, Sons & Co., supra, and Baltimore Car Foundry Co. v. Ruzicka, 132 Md. 491, 104 Atl. 167, 4 A. L. R. 113.) Nor will every violation of statute or a public regulation, or a rule, regulation, order, or instruction of an employer, constitute wilful and serious misconduct. (Citing Merline v. Connecticut Quarries Co., 93 Conn. 57, 60, 104 Atl. 397, and U. S. Fidelity & G. Co. v. Ind. Acc. Com., 174 Calif. 616, 163 P. 1013.) Whether one violation or repeated violations will constitute wilful and serious misconduct must depend upon the circumstances—notably, upon the nature of the misconduct and the character of the statute, regulation, rule, order or instruction violated. Each case must be weighed and determined by its own circumstances. What is serious misconduct is primarily a question of fact, as is a finding of negligence. So, similarly, what is wilful misconduct is a question of fact. (Citing Nickerson's Case, 218 Mass. 158, 105 Atl. 604, Ann. Cas. 1916A, 790, 5 N. C. C. A. 545; George v. Glasgow Coal Co. (1909) A. C. 128, 2 B. W. C. C. 125.)" See, also, Harper on Torts, § 215, and cases collected in note to Baltimore Car Foundry Co. v. Ruzicka, supra, in 4 A. L. R. 116. For cases of workmen injured while doing prohibited acts, see note 119 A. L. R. 1409, and earlier notes cited therein.

In the case at bar there can be no doubt that there was substantial evidence to support the finding that the injury was caused by serious and wilful misconduct, or culpable negligence, of the workman in violating a rule established for his protection. There was

evidence that the rule had been fully and clearly explained to the workman who must have understood the reasons for it and the serious consequences likely to follow its transgression. The instructions of the employer were supplemented and kept alive by the warning signs and by the oral warnings of two fellow workmen. The trial judge could reasonably infer that the workman, being near the portal of the haulage-way, wilfully chose to violate the rule by returning to his working place by the forbidden and dangerous route rather than take the extra steps that would have been necessary in returning by the safe way he had been ordered to travel. His reckless act took him to a place of known danger where he had no work to do and no right to be, and where he became the victim of an accident of the very kind the rule was intended to prevent.

Counsel have cited the statute, § 23-105, R. S. 1931, applying to coal mines and providing, among other things, that:

"In all slopes and planes where mechanical haulage is used suitable manways shall be provided and all employees shall travel these manways to and from their working places, except those who may be required to work on the main haulage-ways, but they shall not be in the main haulage-ways except to perform such work as may be required therein."

As we think the trial judge was justified in holding that the workman was culpably negligent in violating the employer's rule, which substantially embodied the statutory rule, it does not seem necessary to say anything in regard to the effect of the statute of which the workman probably had no actual knowledge. See, Sloss-Sheffield Steel & Iron Co. v. Nations, 236 Ala. 571, 183 So. 871, 19 A. L. R. 1403.

Under our law, the fact that the culpable negligence of the workman was a proximate cause of his injury

and death does not defeat the right of his dependents to compensation unless the evidence shows that the injury was "due solely to the culpable negligence." Negligence of the master, or the workman, or both, is usually immaterial, but when it appears that the negligence of the workman was culpable, the conduct of the employer also may become a proper subject of inquiry for the purpose of deciding whether his negligence was a contributing cause of the injury.

There are a number of statutes (ch. 23, R. S. 1931) enacted for the purpose of providing for the safety of workers in coal mines, and counsel for claimants contends that in this case the employer's failure to comply with some of them was a cause of the injury, and, therefore, the workman's culpable negligence was not the sole cause. Some of the statutes relied on are clearly irrelevant, and need not be cited or discussed. Those that are the basis of plausible argument are the following:

Section 23-109, R. S. 1931, amended by ch. 48, Session Laws of 1933, provides for the employment of mine foremen who shall see that "in all hauling roads, holes for shelter shall be made every thirty yards, and be kept whitewashed, when (sic) a space two feet and six inches between the wagon and rib shall be deemed sufficient for shelter; * * *."

Section 1, ch. 120, Session Laws of 1937, as amended by Ch. 49, Session Laws of 1941, provides that in all haulage-ways in which cars are used, "a minimum clearance of not less than twenty-two inches shall be established and maintained, on the operating side, * * *."

The employer has not conceded that these statutes were applicable to the part of the haulage-way where the workman was injured, but we shall assume that they were. It is admitted that, if applicable, they were

not complied with. In the haulage-way between the portal and the junction, a distance of 75 yards, there were no "holes for shelter," as required by section 23-109, nor the 22-inch clearance required by the act of 1941.

We have had occasion to consider this question of culpable negligence as a sole cause of injury in three cases. In Hotelling v. Fargo-Western Oil Co., 33 Wyo. 240, 238 P. 542, the other cause that prevented the negligence of the injured workman from being considered the sole cause was the probable negligence of a fellow workman, and in Karos v. Oceanas, 34 Wyo. 363, 243 P. 595, and Fuhs v. Swenson, supra, the other causes were unknown or unappreciated hazards of the employment. In each of those cases the workman was injured while at work in a place where he had a right to be, and the question of "sole cause" was only hypothetically involved when we assumed that the injury *may have been* caused by the workman's culpable negligence.

The main purpose of the statutes was to make definite, or perhaps to enlarge, the employer's common law duty to maintain the haulage-way in a safe condition for workman who, while acting within the scope of their employment, had occasion to be there. See 35 Am. Jur. p. 596, § 167. And it may be that the class for whose protection the statutes were passed would include all persons whose presence in the haulage-way should have been anticipated by the employer. 35 Am. Jur. p. 600, § 171. We cannot hold that the class would include a workman who deliberately entered the haulage-way for his own convenience in violation of a rule that was intended to prevent him from coming in contact with the dangerous conditions.

Since the early case of Whitehead v. Reader (1901) 2 K. B. 48, under the English Workmen's Compensation Act of 1897, the courts have recognized that pro-

hibitions intended to control the conduct of workmen are of two kinds. This is often stated in the words of Lord Dunedin in Plumb v. Cobden Flour Mills Co. (1914) A. C. 62, 7 B. R. C. 128, Ann. Cas. 1914B, 495: "There are prohibitions which limit the sphere of employment, and prohibitions which deal only with conduct within the sphere of employment." See, also, Harper on Torts, § 212, p. 431; 71 C. J. 743; Gacesa v. Consumers' Power Co., 220 Mich. 338, 190 N. W. 279, 24 A. L. R. 675; Industrial Com. v. Funk, 68 Colo. 467, 191 P. 125; Laudato v. Hunkin-Conkey, 135 Oh. St. 127, 19 N. E. 2d 898; Hayman Distributing Co. v. Industrial Com., 376 Ill. 90, 32 N. E. 2d 894.

There are, of course, border-line cases in which it is difficult to decide whether the rule belongs to one class or the other (20 Minn. Law Rev. 840) but this is not one of those cases. There can be no doubt that the rule violated by the workman in this case was one that liimted the sphere or scope of employment. The facts were similar in Palla v. Glen Alden Coal Co., 105 Pa. Super. 96, 160 Atl. 157; Jones v. Sloss-Sheffield Steel & Iron Co., 221 Ala. 547, 130 So. 74.

The culpable negligence of the workman took him outside the scope of employment and made him, at the time of injury, an intruder or trespasser. Charron v. Northwestern Fuel Co., 149 Wis. 240, 134 N. W. 1048, Ann. Cas. 1913C, 939; Gypsy Oil Co. v. Ginn, 88 Okla. 90, 212 P. 314; Palla v. Glen Alden Coal Co., supra. The employer was under no duty to keep the haulageway safe for his use.

The purpose of the Workman's Compensation Law is to provide compensation for injuries in extra-hazardous employment. We would extend the law beyond its purpose, if we should hold that a hazard outside the employment was a contributing cause that prevented the workman's culpable negligence from being the sole

cause. The decision that the workman's death was due solely to his culpable negligence cannot be disturbed.

The motion for a new trial was partly on the ground of newly discovered evidence. The granting or denial of a new trial on that ground is within the discretion of the trial court. Hardendorf v. Gafner, 53 Wyo. 427, 84 P. 2d 718; Myuskovich v. State, 141 P. 2d 540, 545. No good purpose would be served by a statement here of the evidence set out in the motion. Some of it was immaterial, some was merely cumulative, and we cannot say that it would have proved any fact that might have led to a different result.

The order of the district court will be affirmed.

BLUME, and RINER, JJ., concur.