OPINION OF THE COURT
Chief Judge Cooke.
The single issue presented is whether decedent’s disregard of his employer’s prohibition against carrying personal firearms on the job leads to the conclusion, as a matter of law, that his accidental shooting did not arise in and out of the course of his employment.
The operative facts are undisputed. On the morning of May 5, 1974, two boys playing in an industrial neighborhood discovered the decedent’s body, clothed in a Pinkerton guard uniform, lying on the ground near the loading dock of a Railway Express Agency terminal which he was assigned to guard. One bullet had been fired from decedent’s .22 caliber pistol found lying at his side. After an autopsy, the cause of death was determined to be a self-inflicted gunshot wound in the abdomen and was ruled an industrial accident.
At a hearing before a referee of the Workers’ Compensation Board, the employer and its compensation carrier contended that the accident did not arise out of the course of decedent’s employment based upon the existence of a work rule forbidding unarmed security guards from carrying firearms while on duty. When decedent was hired, some two months before the fatality, he signed an application acknowledging that he was forbidden to carry a firearm unless instructed to do so. Regulations of the employer provided that contravention of that rule would result in immediate discharge. On the day of the fatal accident, decedent was not permitted to be carrying a gun.
*495 The referee found "accidental death * * * arising out of and in the course of employment and causally related thereto.” The Workers’ Compensation Board reversed and disallowed the claim stating that decedent’s unauthorized carrying of a gun while on duty constituted a violation of a strictly enforced work rule which rendered decedent, and consequently the accident, outside the course of his employment. A divided Appellate Division reversed the board on the law. There should be an affirmance. The crucial inquiry in these "work rule” cases focuses on the thrust of the rule itself, i.e., whether the rule defines what the employee’s duties are or merely how those duties are to be performed. In the former case, violation of the work rule will result in the employee’s acting outside the scope of his employment and any injury resulting therefrom will be noncompensable (e.g., Matter of Yodakis v Smith & Sons Carpet Co., 193 App Div 150, affd 230 NY 593). In the latter case, the opposite result will obtain (e.g., Matter of Fox v Truslow & Fulle, 204 App Div 584, affd 236 NY 634).
As a general rule, the misconduct of an employee, whether framed in terms of simple negligent dereliction of duty or even willful disobedience of the rules of the workplace, has no bearing upon whether an injury is compensable. Under the Workers’ Compensation Law, fault of the respective parties simply has no bearing to the basic test of coverage (see Matter of Granger v Urda, 44 NY2d 91, 97). Instead, with limited exception, the sole inquiry is whether the injury arose out of and in the course of employment (see Workers’ Compensation Law, § 21). If that inquiry be answered in the affirmative, compensation will be awarded the injured worker "without regard to fault as a cause of the injury” (Workers’ Compensation Law, § 10; see, also, § 2, subd 7). And, in keeping with the remedial purpose of compensation laws generally, the Workers’ Compensation Law is to be liberally construed "to accomplish the economic and humanitarian objects of the act” (Matter of Husted v Seneca Steel Serv., 41 NY2d 140, 145). Because of these general considerations, then, there has never developed a rule of general applicability to the effect that an employee forfeits his compensation coverage by performing his duties in a needlessly dangerous way or in conscious disregard of the employer’s instructions (1A Larson, Workmen’s Compensation Law, § 30.00).
The "work rule” cases proceed under this general premise. *496 Simply stated, there is a crucial distinction between the job the claimant has been hired to perform and the manner in which the employee is to accomplish that task. Where the disobedience of a work rule results in the employee overstepping the boundaries defining the ultimate work to be done, the prohibited act is outside the course of employment and any claim for compensation arising therefrom will be denied. But when the misconduct involves a violation of the employer’s regulations or prohibitions relating to the method of accomplishing the ultimate work, however strictly enforced those regulations may be, the act remains within the course of employment. In such a case, disobedience of the prohibition does nothing more than establish fault on the part of the injured employee. Since fault concepts generally are immaterial to compensation law, violation of a work rule relating to the manner in which the job is to be accomplished does not result in an injured employee forfeiting the right to compensation (Matter of Greene v City of New York Dept. of Social Servs., 44 NY2d 322, 325-326; see Matter of Kilgore v Fragola, 14 AD2d 612; Matter of Macechko v Bowen Mfg. Co., 179 App Div 573, 575-576).
A simple example will serve to illustrate this distinction. The lathe operator engaged only to operate that machine will be deemed outside the scope of his employment when, in express contravention of his employer’s instructions, he operates a drill press to relieve boredom (see Matter of Rendino v Continental Can Co., 226 NY 565). In that situation, the work rule so restricts the sphere of employment in terms of permissible activities that its violation will constitute an abandonment of employment in which case compensation will be denied. On the other hand, that same operator is not outside the scope of his employment if, contrary to instructions, he uses his own tools, rather than those of the employer to operate the machine (see Matter of Greene v City of New York Dept. of Social Servs., 44 NY2d 322, supra; Matter of Fox v Truslow & Fulle, 204 App Div 584, 585, affd 236 NY 634, supra; Matter of Chila v New York Cent. R. R. Co., 251 App Div 575, affd 275 NY 585). The employee in this case is performing precisely the task he was engaged to do, albeit in a manner forbidden by the employer.
In the case at bar, the prohibition against carrying firearms was not one which limited the sphere of decedent’s employ *497 ment, but simply dealt with the manner in which his duties were to be performed while on guard duty. This tragic accident did not occur by reason of decedent having arrogated to himself duties which he was forbidden to perform. Decedent was employed to carry out the duties of a security guard. He was engaging in that function when his gun accidentally discharged resulting in his death. While decedent disobeyed his employer’s injunction against carrying firearms, this prohibition restricted the manner in which decedent was to carry out his assigned employment rather than the nature of that employment itself. That decedent performed his duties in a manner prohibited by the employer did not, as a matter of law, remove decedent from the sphere of his employment.
Accordingly, the order of the Appellate Division should be affirmed, with costs.