**In the Matter of the Injury to Dorothy E. SMITH.**

**Dorothy E. SMITH, Appellant (Employee–Claimant),**

v.

**HUSKY TERMINAL RESTR., INC., Appellee (Employer–Respondent).**

No. 88–77.

Supreme Court of Wyoming.

Oct. 21, 1988.

Roberta A. Coates, Cheyenne, for appellant.

Gregory C. Dyekman of Dray, Madison & Thomson, P.C., Cheyenne, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Appellant Dorothy E. Smith (employee) challenges the trial court's order denying her temporary total disability benefits under W.S. 27–12–402 (June 1983 Repl.)[1] She presents the following issues on appeal:

I. Whether the injury sustained by the Claimant arose out of and in the course of employment.

A. Whether there is a causal nexus between the accident of the Claimant and the course of employment.

B. Whether the accident occurred due to the employee acting outside the ultimate work to be done or whether the accident occurred when the employee used a prohibited method of work in her course of her employment.

II. Whether the trial court used the proper test in evaluating the evidence before it.

III. Whether the trial court erred in delaying its order pursuant to Wyo.Stat. 27–12–604(d) (1977), by delaying its order from the hearing of April 15, 1987 to issuing an order on February 1, 1988.

We affirm.

In October of 1985, employee became a cashier for appellee Husky Terminal Restaurant, Inc. (employer), in Pine Bluffs, Wyoming. She held that position through mid-January 1986, when she was laid off temporarily and then rehired as a dishwasher. A few days later employer hired her to cook. She held that position through July 1986. One of her cooking duties during that time involved draining a five-gallon bucket of marinated chickens. She did this task many times between January and July of 1986. Sometime during this same time period she began to feel pain in her back. She was uncertain what

---

1. W.S. 27–12–101 through 27–12–805 (June 1983 Repl.) was repealed and recreated as W.S. 27–14–101 through 27–14–804 (June 1987 Repl.) 1986 Wyo.Sess.Laws, Sp.Sess., ch. 3, § 3.

caused this pain; neither party could say it was work related. She complained of back pain to her supervisor, Mr. Santini, and he told her to see a doctor. The doctor gave her muscle relaxers, and ordered rest and relaxation. This treatment did not stop the pain, and eventually she was admitted to a hospital for some bed rest. This treatment worked, and employee later returned to work at the restaurant as a waitress. Her doctor ordered her not to do any heavy lifting, particularly not to attempt to lift anything heavier than fifteen pounds.

During the late summer of 1986, Mr. Santini and his supervisor, Mr. Olson, contacted employee's doctor to inquire about her ability to return to work as a fill-in cook at the restaurant. In early September employer received a letter from employee's doctor stating that employee's work must not include any lifting of objects heavier than fifteen pounds.[2] At employee's hearing she testified that this letter was posted above the desk in the restaurant office after it was received. At the same hearing Mr. Santini testified that upon receiving this letter he met with employee and the assistant manager to discuss the medical weight restriction that had been imposed upon employee's work. This discussion concerned her reemployment as a fill-in cook at the restaurant conditioned on her agreement not to lift anything heavier than fifteen pounds. He also gave her instructions to have someone else lift any heavy items for her if that became necessary.

After the lifting restriction was imposed, employee returned to the restaurant working as a fill-in cook. Employee testified that during this period she did ask other restaurant personnel to lift the marinating chickens for her. While working the October 10–11, 1986, night shift, employee found the bucket of marinating chickens in the walk-in cooler and tried to drain them by herself. Lifting the bucket, she injured her back. Employee's explanation for picking up the bucket was that the restaurant had become extremely busy during the ear-

ly morning of October 11, 1987, and she had so much work to do that she just did not stop and remember that the bucket of marinating chickens was too heavy for her. She also testified that she had tried to awaken employer's temporary manager, Mr. Stockmeyer, who was sleeping in a trailer behind the building, to lift the bucket for her. She testified that, before lifting the bucket, she slapped on the door of his trailer on her way by it to dump some grease. Last, employee indicated she knew the chickens had to be drained before the next cooking shift, and she feared not draining them might endanger her job as a cook.

Employer countered these explanations with testimony that the night of October 11, 1987, was not a particularly busy night at the restaurant with roughly sixty orders during a six-hour shift. Mr. Santini testified that it was not an extraordinary shift. Neither party introduced any evidence concerning when the orders came in during the course of the shift. Mr. Stockmeyer testified that he never heard employee slap the side of his trailer that night. None of the restaurant managers indicated that employee had a reason to believe her job was in jeopardy if she did not drain the chickens before going off her shift.

After injuring her back, employee returned to her doctor at the urging of an assistant manager. She was treated with more bed rest, therapy, and pain medication, none of which relieved the pain. Eventually, employee's back was treated surgically. Her ability to work is now limited to light housework.

Employee filed her claim for temporary total disability on October 28, 1986. Employer made a proper written objection on January 22, 1987, and a hearing was set for April 15, 1987. The testimony described above was heard at that hearing, which took place as scheduled. Based on the evidence introduced at the hearing, the district court issued a January 7, 1988, deci-

---

**2.** The record shows that this letter was received into evidence at appellant's hearing as Employer's Exhibit A, and that no objection was made by appellant to its introduction. The letter does not appear in the record transmitted to this court.

sion letter denying benefits. The order denying benefits was filed on February 3, 1988. This appeal followed. Culpable negligence is not an issue presented in this appeal since the district court expressly found that employee was not intentionally or culpably negligent.

Employee's first issue is whether an employee who knows and understands specific work restrictions adopted for her safety, exceeds the scope of her employment and loses her rights to benefits under the worker's compensation statutory provisions by disregarding those restrictions. If the answer is "yes," we must also review this record to determine if sufficient evidence exists to support the district court's denial of benefits.

For an injury to be compensable under the worker's compensation system as it existed at the time of employee's injury, the employee's injury must "arise out of and in the course of [the] employment. § 27–12–102(a)(xii), W.S.1977 (June 1983 Replacement)." *Claims of Naylor*, 723 P.2d 1237, 1241 (Wyo.1986). The injury and the employment must also be causally connected. Id. The employee has the initial burden to prove these and all other essential elements of a claim by a preponderance of the evidence. *In the Matter of Bagshaw*, 753 P.2d 1044, 1045 (Wyo.1988).

Our standards of review in worker's compensation cases further require that we review the district court's factual findings by accepting the evidence of the successful party below as true. We do not consider conflicting evidence presented by the unsuccessful party below, and we grant every favorable inference that can be fairly and reasonably drawn from the successful party's evidence. Id.; and *Matter of Injury to Klevgard*, 747 P.2d 509, 510 (Wyo.1987).

Precedent concerning the type of misconduct that is a deviation from the scope of a particular employment focuses on whether the employee knowingly does certain work specifically prohibited, as opposed to an employee's doing authorized work in an unauthorized way. *Bill Lawley Ford v. Miller*, 672 P.2d 1031, 1033 (Colo.App. 1983); and *Brown v. Arrowhead Tree Ser-*

*vice, Inc.*, 332 N.W.2d 28, 30 (Minn.1983). Professor Larson articulates this distinction as the difference between a work restriction on the *ultimate* work to be done and a work restriction concerning the *method* by which the ultimate work is to be done. 1A A. Larson, Workmen's Compensation Law, § 31.00 at 6–8 to 6–14 (1985). See also Id., § 27.14 at 5–325 to 5–327 (1985) (citing *Hoover v. Ehrsam Company*, 218 Kan. 662, 544 P.2d 1366, 1370 (1976); *Scheller v. Industrial Comm'n*, 134 Ariz. App. 418, 656 P.2d 1279, 1281 (1982)); and *Witt v. Marcum Drilling Company*, 73 N.M. 466, 389 P.2d 403 (1964). A specific restriction on the ultimate work to be done can restrict a task of the same character as other tasks which are not prohibited, and still place the prohibited task outside the scope of an employment. See, e.g., *Brown*, 332 N.W.2d at 29; and *Scheller*, 656 P.2d at 1280.

This court has recognized this scope of employment rule but has never applied it directly. See *Hamilton v. Swigart Coal Mine*, 59 Wyo. 485, 143 P.2d 203, 207–208 (1943) (decided on the issue of culpable negligence). Although not quoting the rule, we used its rationale in *Richard v. George Noland Drilling Company*, 79 Wyo. 124, 331 P.2d 836, 839–840 (1958), where we affirmed a district court order denying benefits to a worker who was asphyxiated while sleeping on the floor of the oil drilling rig without his employer's permission.

■ Considering this precedent, it is apparent that there are limited situations in which an employer can put on evidence to refute an employee's preponderance showing that the work causing her injury occurred within the scope of her employment because a work restriction was violated. We hold that an employee can be found to have acted outside the scope of employment by violating a work restriction when the following elements are shown: (1) the employer expressly and carefully informs the employee that she must not perform a *specific task or tasks* while in his employ; (2) the employee knows and understands the specific restriction imposed; (3) the em-

ployer has not knowingly continued to accept the benefit of a violation of the restriction by the employee; and, (4) the injury for which benefits are claimed arises out of conduct that clearly violates the specific restriction.

■ In this case the presence of these four elements is supported by sufficient evidence. Before employee began working as a cook, which she was doing when she reinjured her back, her employer gave her specific and express instructions not to lift anything heavier than fifteen pounds. Her employer did not rehire her as a cook until it received written confirmation from her doctor of what her physical capabilities would be. Her employer discussed this with her and posted her doctor's letter above the manager's desk. Employee's own testimony was that she understood the restriction on lifting the bucket of chickens; further, she had asked other restaurant employees to drain the bucket of chickens for her on occasion before she injured herself at work. Employee considered this restriction on the night of her injury, as illustrated when she tried to awaken Mr. Stockmeyer to lift the bucket for her before she tried to lift it herself. Employee failed to present any evidence, other than her own opinion, to substantiate her fear that by failing to drain the chickens she might be fired. Employer was not shown to have accepted the benefit of any previous violation of the specific lifting restriction before employee injured herself lifting the bucket. The district court heard all of the testimony and determined that employee, despite her complete understanding of the lifting restriction, disregarded the restriction and caused the type of injury the restriction was intended to prevent. We must accept these findings of fact by the district court; they support the conclusion that employee's injury did not occur within the scope of her employment.

Employee's second issue questions the test the district court used to evaluate the evidence it received at the hearing. We quote from the court's decision letter:

In arriving at my decision I have kept in mind the rule of construction, often re-peated by the Supreme Court, that the Worker's Compensation statutes should be interpreted reasonably and liberally to protect the workers. At the same time it is necessary to keep in mind the rights of the employers who fund the system. A compelling observation was made by the Court in *Bartley v. C–H Riding Stables, Inc.*, 206 N.W.2d 660, 662 (Minn.1973).

[T]o hold the employer liable for an injury incurred while performing a prohibited act is to force the employer to become a constant watchdog. No course would be available to the employer to prevent infractions save the firing of an employee doing a prohibited act.

Employee argues that this language shows some sort of trial court preference for employers over employees in worker's compensation decisions. We disagree. Through this language, the district court simply recognizes both the purpose behind the worker's compensation statutes and the practicalities faced by the district court in applying their mandate. We will not presume prejudicial error. *Anderson v. Bauer*, 681 P.2d 1316, 1325 (Wyo.1984). To prevail on this issue, employee must show that this language resulted in prejudice to her case or that a different outcome was possible absent the considerations set out by the trial court in this language. *Id.* She has failed to do so.

■ Employee's third issue alleges prejudice because the district court took this case under advisement at the April 15, 1987, hearing, but did not issue a final order denying benefits until February 1, 1988. We know W.S. 27–12–604(d) (June 1983 Repl.), provides:

(d) At the conclusion of the hearing, the judge shall enter an order pursuant to the verdict of the jury. If no jury was called, the judge shall render a decision upon the facts and law of the case pursuant to the provisions of this act, and make an order ·allowing or disallowing compensation as the law and evidence may warrant.

Employee argues that the spirit of the worker's compensation statutes is violated

when a district court waits over eight months to issue its order under this statute. She then claims the delay itself is grounds for reversal of the order, but cites no authority upon which such a reversal would be based; further, her argument makes no showing of resultant prejudice. Accordingly, we need not consider this issue. See *Kipp v. Brown*, 750 P.2d 1338, 1341 (Wyo.1988).

AFFIRMED.

URBIGKIT, J., filed a dissenting opinion.

URBIGKIT, Justice, dissenting.

Dorothy Smith, worker's compensation claimant, alone as staff except for one waitress in a small town highway roadside all night restaurant, was handling a storm induced customer rush and preparing for the next day as cook, dishwasher and alternate cashier.

It then happened, as she explained in trial testimony:

A. [Dorothy Smith] Just went back in there and started cooking, and then I was in the—I was in the process of doing some dishes and Edna hollered at me, so I ran back in there to see what she wanted. She just handed me an—eight tickets with about 15 orders on them, so I ran back into the walk-in, and that's when I discovered the chicken had not been drained. And Louie always told me that Saturday was a big chicken day and we had to have chickens.

Q. [Her attorney] So what did you do?

A. So, in the middle of my cooking—I went ahead and put my bacon and everything on the grill, all the stuff on the grill—then I ran back in the walk-in and picked up the chickens, and that's when it sounded like a rifle was going on in my back.

I never thought, I really didn't, of the consequences or anything, I just picked them up. I knew they had to be done and that nobody else did them.

Her resulting worker's compensation claim, filed primarily to pay resulting medical bills, was contested by the employer. Additionally, Dorothy Smith was not re-employed following the restaurant injury. The contested hearing was held on April 15, 1987, an opinion letter of denial was written January 4, 1988 and an adverse order entered February 3, 1988.

I dissent from the majority's approval of the denial for two reasons. First, the method test of the applicable legal principle for coverage should be applied. Secondly, in this record, there was absolutely no proof presented that Dorothy Smith directly violated work rules either by earlier dumping grease or later by lifting the chickens to drain.

It was unquestioned that Dorothy Smith had a doctor-directed fifteen pound lifting limitation for work. There is no evidence that she intentionally disregarded the limitation in handling her night shift cooking responsibilities. Further on this record, there is judicial assumption, but absolutely no proof, that the container of chickens actually exceeded the fifteen pound weight limit.[1]

We engage in little more than a matter of semantics without reasoned basis if we deny that what was done by Dorothy Smith was done in the interest of the employer, in a fashion normally to be done for the employer, and the activity was unquestionably within the cook's scope of employment. The record also lacks a scintilla of evidence that Dorothy Smith either considered or expected that injury would likely occur in

1. The employer obviously submitted requests for admission to Dorothy Smith since the answers are filed but the questions are not. Even guessing at the questions affords no evidence of a weight limitation violation during the late night activities of the cook. It is possible that the container did exceed the weight limit, but the employer failed to provide any proof. It is also possible that the sudden activity in handling the chickens would have caused the same result whether the weight was fourteen pounds, sixteen pounds or even more. On this record, there is no proof that the services were not performed in the interest of her employment duty. The only contentious doubt is whether she should have left that needed cooking task for the following shift.

task performance. The sole question is whether, when Dorothy Smith performed that service, rights to worker's compensation were forfeited by the unexpected injury occurrence.

It is not to be questioned that the trial court could properly determine within the evidence of this case that if Dorothy Smith had taken the time to think out carefully her relative exposure to being fired for neglecting preparation of the chickens as necessary cooking work, weighed against other exposure from doing something with the chickens creating the possibility of re-injury, the re-weighing in retrospect could have accommodated a different original choice. What is to be seen in the record is a course of job-related business not controlled by thoughtful analysis of risk or benefit. It needed to be done, had not been done, so she did it.

If co-worker sexist improprieties as an "injury" to a female employee are insulated by the liability immunity of worker's compensation, it is reasonable to determine that taking care of chickens for the next day's restaurant menu is likewise sufficient to afford "a casual connection * * * 'when there is a nexus between the injury and some condition, activity, environment or requirement of the employment.'" *Baker v. Wendy's of Montana, Inc.*, 687 P.2d 885, 892 (Wyo.1984) (quoting *In re Willey*, 571 P.2d 248, 250 (Wyo.1977)). In this case,

there really was no determinative factual conflict within the almost minuscule supply of evidence. At issue is the legal principle application to the injury causing, work place activity committed in the hurried sequence of job performance. The job restriction involved lifting something greater than fifteen pounds and otherwise had no direct relation to the procedure to drain the chickens or any other activities included as "cooking."

I neither differ with the dual rules stated by the majority nor find the cases provided by the majority to actually support the ultimate decision made in this case on these facts to justify the denial rule selected. Those cited cases clearly represent the definable, prohibited work application, while this chicken-bucket case is clearly definable as a method case. Larson would capitalize this as the distinction between "thing and method." 1A Larson, Workmen's Compensation Law § 31.21 at 6–21 (1985) (to cook or how to cook). However, the treatise then concludes:

Actually, as the review of cases below will show, this sophistry has had very little success, and the great weight of present authority respects the plain meaning of the distinction between method and ultimate objective.

1A Larson, supra, at 6–22. For this conclusion, there is recited a volume of case examples[2] which I would find to be compara-

---

**2.** *Blair & Co. v. Chilton,* 84 L.J.K.B. 1147, 8 B.W.C.C. 324 (1915) (sitting on a fender to operate a dangerous machine); *Kilgore v. Fragola,* 14 A.D.2d 612, 218 N.Y.S.2d 146 (1961) (operating meat-grinding machine with guard removed); *Mawdsley v. West Leigh Colliery Co.,* 5 B.W.C.C. 80 (1911); *In Re West,* 313 Mass. 146, 46 N.E.2d 760 (1943) (oiling machinery in motion); *Kolaszynski v. Klie,* 91 N.J.L. 37, 102 A. 5 (1917) (using alcohol to light a fire); *Merchant v. Pinkerton's Inc.,* 50 N.Y.2d 492, 429 N.Y.S.2d 598, 407 N.E.2d 443 (1980) (carrying a gun); *Macechko v. Bowen Mfg. Co.,* 179 App.Div. 573, 166 N.Y.S. 822 (1917) (reaching into a machine without stopping it); *Gadsden Iron Works v. Beasley,* 249 Ala. 115, 30 So.2d 10 (1947) (speeding up iron-moulding to do five hours' work in four); *Case of Bennett,* 140 Me. 49, 33 A.2d 799 (1943) (jumping a railing instead of following a stairway); *Hartley v. North Carolina Prison Dept.,* 258 N.C. 287, 128 S.E.2d 598 (1962) (climbing a fence rather than walking 300 feet to the gate); *Alabama Concrete Pipe Co. v. Berry,*

226 Ala. 204, 146 So. 271 (1933); *Pacific Employers Ins. Co. v. Kirkpatrick,* 111 Colo. 470, 143 P.2d 267 (1943); *Anderson v. Woesner,* 66 Idaho 441, 159 P.2d 899 (1944) (getting on or off a moving vehicle); *Morris v. James Bell Co.,* 10 N.J.Misc. 619, 160 A. 211 (1932) (riding on top of the cab of a truck); *Smoot Sand & Gravel Corporation v. Britton,* 152 F.2d 17 (D.C.Cir. 1945); *Siglin v. Armour & Co.,* 261 Pa. 30, 103 A. 991 (1918) (riding on running board of truck); *Chicago Rys. Co. v. Industrial Board,* 276 Ill. 112, 114 N.E. 534 (1916) (leaving a trolley in such condition that it might move when connection made); *Fickbohm v. Ryal Miller Chevrolet Co.,* 228 Iowa 919, 292 N.W. 801 (1940) (washing car with inflammable liquid without disconnecting battery); *Travelers Ins. Co. v. Burden,* 94 F.2d 880 (5th Cir.1937) (failing to use a respirator and getting lead poisoning from fumes); *Kingsport Foundry & Machine Works v. Sheffey,* 156 Tenn. 150, 299 S.W. 787 (1927) (using an emery wheel for a job which the employer had said

ble to the cook who drains the chicken bucket.

In the conceptually perfect, but actually imperfect world in which we live, it is axiomatic that pure accidents never occur and fault in some factor is always attendant to climactic occurrence and resulting injury. Somebody did something wrong or the event never would have occurred. It is into this undeniable character of events that worker's compensation laws were evolved, and Wyoming's constitutional amendment of 1914 was approved by the citizens of this state to furnish a substitute for negligence and fault theories of employee protection. No longer was the test to be liability since compensation for injury was only limited to (1) an incurrence within covered extra-hazardous employment if resulting injury was (2) the result of a cause which was not solely due to culpable negligence of the injured employee. *Matter of Injury to Spera*, 713 P.2d 1155 (Wyo.1986); *Parker v. Energy Development Co.*, 691 P.2d 981 (Wyo.1984).

> One of the salutary purposes of worker's compensation acts is to provide specified benefits for injuries arising out of and in the course of employment regardless of fault of the employer or employee, except instances of willful misconduct or intentional injury.

*Uninsured Employer's Fund v. Keppel*, 1 Va.App. 162, 335 S.E.2d 851, 852 (1985).

> [T]he purpose of the Workers' Compensation Act is financial protection for an injured worker without regard to fault, * * *.

*Patterson v. State Acc. Ins. Fund Corp.*, 64 Or.App. 652, 669 P.2d 829, 830 (1983).

A possible end run on the constitutional concept of worker's compensation benefits can be premised upon interrelating negligent performance to non-employment status. It is within this penumbra of employees' constitutional rights and employers' practical responsibility for discretionary work direction and control that the diver-

gencies of prohibited work compared to unauthorized method of performance were developed as alternative tests for injury compensation or denial. My difference with the majority is not assignable to disputes about the rules and principles, but only which rule to apply in this case. Obviously, the differentiation invokes consideration of the fact sensitivity of compared cases. Again, in comparison, we are not faced with ignored directions to avoid involvement with draining chickens. "Don't lift too much" is quite different and clearly more generalized as in this case emplaced without furnished scales to weigh one's work so as not to exceed fifteen pounds for any lift during cooking.

Wyoming cases on this general subject include *Hamilton v. Swigart Coal Mine*, 59 Wyo. 485, 143 P.2d 203 (1943), where the employee trespassed into the mine haul road from approved walkways to be hit by the coal car and killed and *Richard v. George Noland Drilling Company*, 79 Wyo. 124, 331 P.2d 836 (1958), where fatality resulted from the employee going to sleep in the butane-heated oil rig doghouse while in an intoxicated state as a place where the employee was inappropriately sleeping rather than working. Cf. *Wyoming State Treasurer, ex rel. Worker's Compensation Division v. Svoboda*, 573 P.2d 417 (1978) and *Svoboda v. Wyoming State Treasurer, ex rel. Worker's Compensation Division*, 599 P.2d 1342 (1979), also involving contended intoxication. Although both Hamilton and Richard were phrased in terms of culpable negligence, they would be better emplaced within the prohibited work—prohibited method context of present consideration by the courts.

Furthermore, reading the cases cited by the majority leads us no closer to denial in this chicken-bucket case. *Brown v. Arrowhead Tree Service, Inc.*, 332 N.W.2d 28 (Minn.1983), involved specific disregard of instructions not to become a tree-topper; *Hoover v. Ehrsam Co.*, 218 Kan. 662, 544 P.2d 1366 (1976), considered a man con-

was unsuitable); *Imperial Brass Mfg. Co. v. Industrial Commission*, 306 Ill. 11, 137 N.E. 411 (1922) (using sulphuric acid to clean a urinal instead of Gold Dust); and *Liner v. Travelers*

*Ins. Co.*, 41 So.2d 804 (La.App.1949) (pouring gasoline into the tank of a motor while motor was running). 1A Larson, supra, at 6–22–24.

fined to absolutely no manual labor status who attempted a task requiring either a chain hoist or four men for ordinary performance to unstick industrial equipment; *Scheller v. Industrial Com'n of Arizona*, 134 Ariz. 418, 656 P.2d 1279 (App.1982), related to a security guard directed to stay "on post" and who went chasing miscreants from an adjacent area and suffered injury in throwing his baton; and *Witt v. Marcum Drilling Co.*, 73 N.M. 466, 389 P.2d 403 (1964), finds an injured and benefit-denied employee using a machine tool in violation of specific operational instructions with which he was familiar.

To be compared with these clearly defined, ultimate objective cases are the numerous work method cases recited by 1A Larson, supra, at § 31.22, where benefits were provided despite prohibited methods, tools or materials. Several of the more recent cases provide interesting relevance in application, *Patterson*, 669 P.2d 829, involved an employee injured in removing an unruly patient from employer's premises when he overstepped a prohibition of distance necessitating removal from the premises; *Port Neches Independent School Dist. v. Soignier*, 702 S.W.2d 756 (Tex.App. 1986), afforded compensation benefits to the injured employee who left the scaffold and attempted to paint from the basketball backboard itself; *Uninsured Employer's Fund*, 335 S.E.2d 851, employee continued roofing, although at least allegedly, was advised to discontinue when he reached the steep area until his supervisor returned; and *Smith v. Hussmann Refrigerator Co.*, 658 S.W.2d 948, 951 (Mo.App.1983), compensation was afforded for injury, although employee was directed not to use the forklift for certain cleaning activities on a specified Saturday, and when used, a large piece of equipment fell and employee was hurt in performance of what was found to be "part of the sphere of claimant's assigned duty [as] an act of cleaning up." The Missouri court in *Smith*, 658 S.W.2d at 950 (quoting Honnold on Workmen's Compensation Vol. 1, § 113) stated:

"There are prohibitions which limit the sphere of employment, and prohibitions which deal only with the conduct within such sphere. A transgression of the prohibition of the latter class leaves the sphere of employment where it was, and consequently will not prevent recovery of compensation."

One of the often cited authorities is *Hayes v. Ambassador Court, Inc.*, 58 N.J. Super. 215, 156 A.2d 11 (1959), where the employee, as an apartment manager, was injured when attempting to unfasten a stuck window for a tenant. Although argument existed whether the employee expected a tip from the tenant, the principle thesis was that, although the particular service was not necessarily authorized or directed, it was, as Larson says, "[a]n act outside of an employee's regular duties which is undertaken in good faith to advance the employer's interests, whether or not the employee's own assigned work is thereby furthered, is within the course of employment." *Hayes*, 156 A.2d at 14 (quoting 1A Larson, supra, § 27.00 at 5–314).

In finding that the activity of draining the chickens was clearly within the sphere of employment, I would also follow the rule that a transgression, if one did occur, as a prohibition of weight-lifting, left the sphere of employment where it was and should not prevent recovery of compensation. *Smith*, 658 S.W.2d 948. We should not ignore the preclusively stated interpretive axiom of liberal construction to provide redress for employment related injury in exchange for denial of employee's common law rights of tort action. *Matter of Johner*, 643 P.2d 932 (Wyo.1982); *Mauch v. Stanley Structures, Inc.*, 641 P.2d 1247 (Wyo.1982).

For any decision on Dorothy Smith's injury compensation, her work-place duty-directed injury calls into question whether the application of the denial principle of prohibited work should be applied or whether the benefit justifying principle of a prohibited method of work is appropriate. Prohibited work is the wrong rule, and consequently, I dissent.