Susan W. McKENNAN, Personal Representative of the Estate of Terry Don McKennan, Deceased, Appellant (Plaintiff),

v.

Richard C. NEWMAN; Ron Rabe; Gary Senier; and Terry Caywood, Appellees (Defendants).

No. 94–244.

Supreme Court of Wyoming.

Sept. 18, 1995.

James P. Castberg, Sheridan, for appellant.

Kim D. Cannon and Anthony T. Wendtland of Davis and Cannon, Sheridan, for appellees.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

LEHMAN, Justice.

Susan W. McKennan (appellant), as personal representative of the estate of her late husband Terry McKennan (McKennan), filed a wrongful death action against Richard Newman, Ron Rabe, Gary Senier and Terry Caywood (appellees), several employees of her husband's employer, alleging culpable negligence on their part in the work-related accident which caused her husband's death. Appellant appeals the district court's order

granting appellees' motion for summary judgment.

We affirm.

Appellant raises a single issue for review: The District Court erred in granting the Appellees' Motion For Summary Judgment in that there are genuine issues of material facts as to the culpable negligence of the Defendants which would preclude the granting of a Motion For Summary Judgment.

## BACKGROUND

Terry McKennan was killed in an industrial accident on September 22, 1989, while in the employ of Wyoming Sawmills, Inc. McKennan died when he became entangled in a wood chip-augur, apparently when he attempted to unclog it. This tragedy has given rise to two prior decisions by this court. In the first, *McKennan v. Wyoming Sawmills, Inc.,* 816 P.2d 1303, 1304 (Wyo. 1991), we concluded that appellant could not maintain an action alleging that McKennan's employment was unlawful in that he was required to work in conditions which violated the Wyoming Occupational Health and Safety Act because "the existence of OHSA violations does not render otherwise lawful employment unlawful."

In the second case, and the relevant one for our present purposes, we remanded a dismissal of a wrongful death action based on negligence and the failure to act within the scope of employment against the appellees to allow appellant an opportunity to amend her complaint in accordance with *Mills v. Reynolds,* 837 P.2d 48 (Wyo.1992). *McKennan v. Newman,* 843 P.2d 602, 603 (Wyo.1992).

On remand, appellant filed a second amended complaint alleging that appellees were guilty of culpable negligence in the death of her husband in that they: operated the sawmill in a dangerous, unsafe and hazardous manner and knew or should have known it was being so operated; failed to maintain and supervise an adequate safety program; failed to use "lockout devices" which would lock out the power at the main disconnect switch of the equipment; failed to install safety guarding on the equipment;

and failed to place hazard warnings in the work area. Appellees moved for summary judgment, which the district court granted on July 21, 1994. It is from that order appellant now appeals.

## STANDARD OF REVIEW

Our review of a summary judgment in an action alleging culpable negligence by coemployees was recently set out in *Smith v. Throckmartin,* 893 P.2d 712, 714 (Wyo.1995) (*quoting Baros v. Wells,* 780 P.2d 341, 343 (Wyo.1989)):

> In *Barnette v. Doyle,* Wyo., 622 P.2d 1349, 1362 (1981), we defined the term "culpable negligence" as "willful and serious misconduct." We defined the term "willful" in this context as " 'such as is done purposely, with knowledge—or misconduct of such a character as to evince a reckless disregard of consequences.' " *Id., quoting Hamilton v. Swigart Coal Mine,* 59 Wyo. 485, 143 P.2d 203, 206, 149 A.L.R. 998 (1943).
>
> The aggravating factor which distinguishes willful misconduct from ordinary negligence is the actor's state of mind. In order to prove that an actor has engaged in willful misconduct, one must demonstrate that he acted with a state of mind that approaches intent to do harm. State of mind, of course, may be difficult to prove. Accordingly, courts allow a party to establish that willful misconduct has occurred by demonstrating that an actor has intentionally committed an act of unreasonable character in disregard of a known or obvious risk that is so great as to make it highly probable that harm will follow.
>
> *Bryant v. Hornbuckle,* 728 P.2d 1132, 1136 (Wyo.1986) (*quoted in Stephenson v. Pacific Power & Light Company,* 779 P.2d 1169, 1174–75 (Wyo.1989), and *Johnston [v. Conoco],* 758 P.2d [566] at 568–69 [ (Wyo. 1988) ] ).

We went on in *Smith* to say that:

> In prior cases, we have attempted to define culpable negligence by stating what it was not. In *Barnette v. Doyle,* 622 P.2d 1349, 1362 (Wyo.1981), we said, "[a] defendant is not culpably negligent if his misconduct arose from a 'thoughtless, inadver-

tent' act, or an error in judgment." We relied upon *Hamilton v. Swigart Coal Mine*, 59 Wyo. 485, 143 P.2d 203 (1943). In *Case v. Goss*, 776 P.2d 188, 191 (Wyo. 1989), we said willful misconduct "must be more than mere mistake resulting from inexperience, excitement or confusion, and more than mere thoughtlessness or inadventure, or simple inattention." We also said culpable negligence is recognized as "an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."

*Smith*, 893 P.2d at 714.

 Summary judgment will be proper only if there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. *Smith*, 893 P.2d at 714 (*quoting Baros*, 780 P.2d at 342). Our review is in the same light as the district court's, using the same materials and following the same standards. *Id.* When examining the record, we do so from the vantage point most favorable to the party which opposed the motion, giving that party the benefit of all favorable inferences which can fairly be drawn from that record. *Id.*

### DISCUSSION

 The focal point of our review is upon the materials submitted by both parties in support of, or in opposition to, the motion for summary judgment. *Smith*, 893 P.2d at 714. From these materials we must determine whether there are genuine issues of material fact as to whether the appellees "engaged in intentional and unreasonable acts in disregard of a known or obvious risk so great as to make it highly probable" McKennan's death would follow. *Smith*, 893 P.2d at 715.

 Appellant makes three contentions in her attempt to support her claim of culpable negligence. First, she argues that McKennan was inadequately trained in the operation of the chip-augur and in unplugging it. Second, she claims that McKennan was not supervised closely on the night of the accident. The major thrust of appellant's third claim, however, is that the overall lack of safety at the jobsite was such that there was an unreasonable disregard of a known and obvious risk which was so great that it was highly probable that an injury would occur.

In support of this claim, appellees point to an OSHA inspector's report cataloging certain safety deficiencies in the sawmill. Appellees also rely on an expert's affidavit concluding that the sawmill was operated in an unsafe manner and lacked proper safety operating procedures. Appellees further point to the testimony of an employee who stated that he had never attended a safety meeting in which all of the employees of the plant were involved and that he had been required to sign a statement that said he had read the safety manual before he had an opportunity to actually do so. The employee also stated that he was never asked whether he understood the manual or if he had any questions. Finally, appellees note that the clerk of the district court, in an affidavit, stated that there were 125 worker's compensation claims filed in a 99–week period from the sawmill. This is evidence, appellees contend, that the facility was lacking in safety procedures.

In their motion for summary judgment, appellees averred that they were not culpably negligent in McKennan's death. In support of their contention, appellees noted that: the chip-augur area had never been identified as highly dangerous by government inspectors prior to the accident; no serious injuries or deaths had occurred in that area; McKennan was informed by Caywood that if the augur became plugged he was to turn off the machine and report to the chipper station for assistance; and McKennan's job did not require him to be on the second level where the accident occurred.

Based on a review of the record, we conclude that appellant has failed to offer material opposing summary judgment which shows the requisite state of mind on behalf of the appellees in order to create an issue of material fact. Appellant's claim centers around the alleged safety violations. We have said in regard to the invocation of safety manuals and regulations in an attempt to show culpable negligence:

While these asserted violations [of OHSA] may constitute evidence of ordinary negligence, they do not demonstrate a state of

mind consistent with culpable negligence, which requires knowledge or obviousness of a *high probability of harm.*

*Poulos v. HPC, Inc.,* 765 P.2d 364, 366 (Wyo. 1988) (emphasis added). Appellant has managed to produce evidence of ordinary negligence; however, she has failed to demonstrate that appellees acted with knowledge or that the high probability of harm presented by the chip-augur was obvious. In order to succeed, appellant needed to introduce evidence that appellees acted with knowledge of the particular danger posed to McKennan by the chip-augur or that the danger was so obvious that the risk of McKennan's death was highly probable to result.

The evidence is uncontroverted that there were no previous injuries or deaths associated with the augur which would have put appellees on notice of its dangerous nature. Similarly, the statistics regarding worker's compensation claims fail to establish culpable negligence since there is no evidence that any of those claims were related to the chip-augur area. The evidence brought forward by appellant in opposition to the motion for summary judgment was insufficient to raise an issue of material fact that appellees acted with the state of mind consistent with culpable negligence. That there is the potential for inferences to be drawn from her evidence that culpable negligence existed, is not enough, by itself, when confronted with the uncontroverted evidence that demonstrates that appellees did not act "in disregard of a known or obvious risk [that was] so great as to make it highly probable" that McKennan's death would follow. *Smith,* 893 P.2d at 715.

### CONCLUSION

Appellant failed to meet her burden of establishing that appellees had the requisite state of mind in order to present a genuine issue of material fact; therefore, the district court's order granting summary judgment in favor of appellees is affirmed.