**Joel Patrick MARTIN, Personal Representative of the Estate of Joel Irskin Martin, deceased, Appellant (Plaintiff),**

v.

**ALLEY CONSTRUCTION, INC.; and Patrick Alley, Appellees (Defendants).**

No. 95–25.

Supreme Court of Wyoming.

Oct. 23, 1995.

Glen H. Johnson of Johnson Huffman, P.C., Rapid City, South Dakota; James L. Edwards of Stevens, Edwards & Hallock, P.C., Gillette, for appellant.

Daniel E. Ashmore, Mark J. Connot of Gunderson, Palmer, Goodsell & Nelson, Rapid City, South Dakota; J. Stan Wolfe, Gillette, for appellees.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

In this appeal we determine whether the district court properly granted summary judgment in a co-employee, culpable negligence [1] case.

1. *See Copp v. Redmond,* 858 P.2d 1125 (Wyo. 1993).

We affirm.

Joel Patrick Martin[2] raises these issues: Did the District Court err in concluding that material fact issues do not exist?

Did the District Court improperly apply the law of comparative negligence in this culpable negligence case?

Patrick Alley[3] summarizes the issue thus: Did the district court properly grant summary judgment as to the issue of Patrick Alley's alleged culpable negligence?

During the early months of 1992, Alley was constructing an 80' × 180' metal building in Gillette. On March 3, 1992, the metal siding had been completed and about 60% of the roofing insulation and metal roof skin had been installed. The insulation was made of four-inch thick fiberglass with a vinyl white covering and was installed in rolls that ran from eave to eave over the top of the building. At the time of this accident, the peak of the roof was only covered with the fiberglass insulation until the roofing was sufficiently complete so that the ridge cap could be installed. The "gap" at the peak of the roof was approximately twelve to eighteen inches wide and may have been wider in some areas. In addition, the last six to eight inches of the roof, just before the "gap," was not secure and could buckle under the weight of a man.

On March 3, 1992, Martin showed up at the work site to see if day-work was available (one of Alley's employees told him such work might be available). Because of the possibility of windy conditions, Alley needed extra men to help with the roofing and to do other tasks as the metal sheets were being installed.[4] Martin was directed to come up on the roof. He was wearing cowboy boots. The pitch of the roof on the building was very gradual. Alley testified he told and demonstrated to Martin where to step and where not to step, directing him to stay away from the insulation "gap." Martin was walking somewhat behind and to the left of Alley as they moved across the roof. Alley looked over at Martin as they crossed the "gap" and saw him go through the roof. Martin fell approximately twenty-eight feet to the concrete pad which formed the floor of the metal building. Martin had been on the roof less than ten minutes in all.

On January 14, 1994, suit was filed alleging Martin's injuries resulted from Alley's culpable negligence. Alley answered Martin had already received worker's compensation benefits and he had not been culpably negligent in the circumstances leading to Martin's fall.[5] Alley filed a motion for summary judgment which was granted by the district court.

Martin contends the district court erred in concluding there were no genuine issues of material fact and Alley was entitled to judgment as a matter of law. Martin's theory is this: Alley was exercising direct supervisory control over Martin at the time of the accident and could have prevented the fall; Alley knew the metal had an oily surface, was slippery and that Martin should have been instructed not to wear cowboy boots; Alley did not take the time to properly instruct

---

2. Joel Irskin Martin died of injuries suffered in the course and scope of his employment. Joel Patrick Martin, the deceased's son, serves as his personal representative in this litigation. For convenience and clarity, we will use "Martin" when referring to the decedent, as well as to his personal representative.

3. Martin's complaint also included a claim against Alley Construction, Inc. That claim is not pursued in this appeal and, of course, it could not be under the theory of co-employee, culpable negligence. No other theory was pursued below or in this appeal. See *McKennan v. Wyoming Sawmills, Inc.*, 816 P.2d 1303 (Wyo. 1991).

4. Alley hired many employees in this manner, *i.e.*, for day-work. On the day of the accident at least three of the other eight employees working that day had been hired that same way. Alley generally required new employees to have some experience on oil rigs, metal buildings, or pole barns. The employee who told Martin day-work might be available represented to Alley that Martin had experience assembling pole barns.

5. The thrust of Martin's complaint was really that Martin had not been an employee of Alley Construction, *i.e.*, no agreement Martin would be employed had been consummated before he fell. The district court determined Martin was an employee and that decision is not a subject of this appeal. However, the district court resolved the remaining issues in the case on the basis of the culpable negligence claim and that was Alley's principal defense to this lawsuit.

Martin about where or how to step, that the edge of the metal roof near the insulation might buckle under his weight, and the insulation "gap" was a serious danger. He also contends Alley was more concerned with telling him where not to step, because of possible damage to the roof, than with the potential danger to Martin.

Martin maintains, whereas Alley and Alley's foreman on this job testified in deposition and affidavit that Martin had been instructed how to safely walk across the roof, other employees contradicted that testimony, thus creating a genuine issue of material fact. He refers to the deposition of Bobby Hart as supporting that proposition but Hart stated in his deposition Alley specifically instructed Martin where to walk and that "whatever you do, don't step in the middle." Martin also refers to the deposition of Corbin Moudy, another employee on this job. Moudy testified he really did not hear the conversation in any significant detail, but he did observe Alley showing Martin where to step and saying "that's where you step" (pointing to the purlins [6]). Another point made by Martin in his brief is Martin was not told he should not step on the metal near the "gap" because it could give way and the oil-coated metal was very slippery. Although no one really saw exactly what happened, it appeared Martin stepped on the edge of the metal roofing because it was bent at the location where he fell through the insulation material. Martin also contends there is a dispute as to whether, when he fell through the roof, he was carrying, or dragging, or helping Alley carry a piece of metal sheeting. Alley related Martin was not carrying, nor helping to carry, a piece of metal but that he was taking Martin to the north side of the roof to show him how to apply adhesive stripping which went between the insulation and the metal sheeting. The only evidence to the contrary is a supposition that Martin was carrying a piece of metal because there was one lying on the roof near the spot where he fell through.

Continuing, Martin contends it would have been better and safer to have placed the ridge cap over the "gap" as the construction project went along, thus reducing the hazard to workers such as Martin. However, the only evidence in the record, other than Martin's speculation, was to the effect that placing the ridge cap on as the last task in finishing the roof was standard practice and not a safety hazard so long as employees followed directions not to step on or near it. The reason the ridge cap was placed last was because it had to be on straight and that determination could not be made until all the other metal sheeting for the roof was in place.

Martin also points to a total lack of safety training or safety meetings as an element of his claim of culpable neglect. The record does reflect no formal training was accomplished by Alley and, of course, the only training of any sort Martin received was the few minutes of directions given by Alley just before Martin fell through the roof.

Finally, Martin contends Alley should have noted Martin was wearing cowboy boots, that cowboys boots would present a significant hazard on the roof, and Alley should not have allowed Martin to go to work wearing cowboy boots.

■■■■■ Our standard of review in cases such as this is well-delineated. Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. We review a summary judgment in the same light as the district court, using the same materials and same standards. We examine the record from the vantage point most favorable to the party opposing the motion and give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Smith v. Throckmartin,* 893 P.2d 712, 714 (Wyo.1995) (quoting *Baros v. Wells,* 780 P.2d 341, 342 (Wyo.1989)); *Morris v. Smith,* 837 P.2d 679, 681 (Wyo.1992). While summary judgment is seldom appropriate in simple negligence

---

**6.** Purlins are horizontal members in a roof supported on the principals and supporting the common rafters. The location of the purlins was noticeable from the roof because the metal roof sheeting was screwed down to the purlins, *i.e.,* the screws which held the metal sheets to the purlins marked the route where it was safe to walk.

cases, culpable negligence involves more than unreasonable conduct; it involves willfulness and when a party fails to raise a genuine issue of material fact on this element, summary judgment is appropriate. *Calkins v. Boydston*, 796 P.2d 452, 454 (Wyo.1990).

■ At the next level of review standards, we have defined "culpable negligence" as acts which are intentional, unreasonable and taken in disregard of· a known or obvious risk so great as to make it probable injury will follow and, further, it involves an extreme departure from ordinary care in a situation where a high degree of danger is apparent. Thoughtless, heedless, or inadvertent acts do not constitute culpable negligence, nor do mere errors in judgment or simple inattention. Mistakes in judgment resulting from inexperience, excitement, confusion, or inattention likewise do not constitute culpable negligence. *McKennan v. Newman*, 902 P.2d 1285, 1286–87 (Wyo.1995); *Throckmartin*, 893 P.2d at 714–15; *Morris*, 837 P.2d at 682; *Calkins*, 796 P.2d at 454–55 (and see cases summarized therein).

■ Here, Martin contends Alley failed to show him how to safely work on the roof. The evidence of record is uncontradicted that Alley showed Martin how to cautiously move about the roof so as to avoid the only significant hazard he had to face—falling through the insulation. On this factor, it cannot be concluded Alley acted with culpable negligence, though it may have been an error in judgment to expect Martin to "catch on" so quickly.[7] Martin contends Alley should have put the ridge cap on as the work went along, so as to avoid the safety hazard which took Martin's life. There is no evidence in the record to suggest anything more than that such a procedure would have been "preferable" or "more safe" than the procedure which was used and which was standard practice according to the testimony in the record. On this factor we cannot conclude there is evidence from which it might be inferred Alley

was culpably negligent, or for that matter negligent in any sense. Martin contends more safety training should have been provided to Martin. Alley was not cited for any safety violations in this matter, except for his failure to have reported the accident within the time required by the Occupational Health and Safety Administration. More training would, no doubt, have been of significant benefit. However, it cannot be concluded on the record that such failing on Alley's part rises to the level so as to infer Alley acted with willful disregard for Martin's safety in the face of an obvious danger. On this factor we cannot conclude there is evidence Alley was culpably negligent. Martin contends Alley should not have allowed Martin to work in cowboy boots. There is no evidence in the record this circumstance was a safety hazard under the working conditions present the day Martin was injured. Certainly, however, we cannot conclude from this circumstance that Alley was culpably negligent in that regard.

■ Finally, there is in Martin's brief a suggestion that cumulatively the circumstances outlined above constituted culpable neglect. Having reviewed our rather extensive jurisprudence with regard to culpable negligence,[8] we conclude that, taken as a whole, the record does not contain evidence from which it could be inferred by a fact finder that Alley's actions were willful or he knew of a hazard which was likely to produce injury to Martin. Certainly, it cannot be gainsaid that there were hazards associated with the sort of work Martin hired on to perform. It is evident from this record those are the hazards of that sort of work under most usual conditions. That is the very purpose of the worker's compensation benefits which Martin did receive. The purpose of damages in the culpable neglect arena is to deter willful carelessness which is doubtlessly destined to produce injury to an employee. Objectively viewed, no evidence in this record suggests that remedy is appropriate under

---

7. Alley testified in deposition that, although he had been in the business of constructing such metal buildings for many years (approximately 15), he had never had anyone fall through the roof as Martin did.

8. *See generally Morris v. Smith*, 837 P.2d 679 (Wyo.1992), and *Case v. Goss*, 776 P.2d 188 (Wyo.1989). Those cases are instances in which detailed analysis differentiated between co-employee actions which create genuine issues of material fact and those which do not.

the circumstances of this case, though, of course, we are mindful of the serious consequences this accident had for Martin and his family.

Martin also contends the district court improperly applied the law of comparative negligence in this culpable negligence case. In its order granting summary judgment to Alley, the district court stated, "That knowledge and appreciation of the danger, if based on common sense, is attributed to both the employee and employer. This danger on the roof should have been known to both parties, especially when Joel Martin was told where to step and where not to step on the roof." It is evident from the record as a whole the district court applied the jurispru-

dence of culpable negligence in deciding the case, just as we have done in this appeal. The reference to what sounds like "comparative negligence" is, perhaps, faulty and imprecise, but it can constitute nothing more than harmless error under the circumstances of this case. WYO.R.APP.P. 9.04.

The judgment of the district court is affirmed in all respects.